¶ 1. On May 9, 2001, the Webster County Chancery Court held that the Ellisons had no interest in the property that they purchased by quitclaim deed which is located on the western border of the Meek *Page 733 
property. Aggrieved, the Ellisons present several assignments of error, which we have clarified and summarized as follows:
 I. THE LOWER COURT ERRED IN ITS APPLICATION OF ADVERSE POSSESSION.
 II. THE LOWER COURT ERRED IN ALLOWING THE TESTIMONY OF MIKE GORALCZYK.
 III. THE LOWER COURT ERRED IN ALLOWING HEARSAY EVIDENCE OF THE DECEASED MR. BRIGHT.
Finding no error, we affirm.
¶ 2. The Meeks have filed a cross-appeal, presenting two assignments of error, which we have clarified and summarized as follows:
 THE ELLISONS HAVE SLANDERED PROPERTY OWNED BY THE MEEKS, THUS ENTITLING THE MEEKS TO DAMAGES INCLUDING ATTORNEY'S FEES AND SURVEYOR'S FEES.
Finding no error, we affirm.
 FACTS
¶ 3. In 1953, Charlie and Kavis Lollar purchased 14.64 acres of land on the south side of Highway 82, just outside the city limits of Eupora, Mississippi. The description of this piece of property was very definite, as it was likely prepared by a surveyor. One border of the property was Highway 82 for a specified distance; one border of the property was the south line for a specified distance; and the third border was a straight line connecting the first two, which made up the east side of the lot.
¶ 4. On August 17, 1961, the Lollars sold their lot to C.A. Walker. On December 4, 1969, Walker sold the lot to the Brights. The same description used in the Lollar purchase was used when the Lollars sold the lot to Walker and when Walker sold the lot to the Brights.
¶ 5. On January 20, 1969, the Meeks purchased 18.5 acres of land which was adjacent to the Bright property. The deed issued in this purchase listed the west line of the lot as the exact same line listed as the east line of the Lollar deed, the Walker deed and the Bright deed.
¶ 6. On July 13, 1994, Ms. Bright, who had recently become a widow, sold her lot to the Ellisons. The same description used in the Lollar deed, the Walker deed and the Bright deed was also used in the warranty deed when Ms. Bright sold the lot to the Ellisons.
¶ 7. Ms. Bright also sold the Ellisons an additional piece of property that was located to the east of the property listed in the warranty deed. Because this additional property was not included on the warranty deed, Ms. Bright made the sale by a quitclaim deed. This additional property was mainly timberland, which enhanced the value of the total property the Ellisons were purchasing. The quitclaim deed described the property conveyed in the same manner as the warranty deed, with exception to the eastern border line. Rather than listing the surveyed border line that was in the warranty deed, the quitclaim deed listed an old fence line as the eastern border. This old fence line can be found several feet east of the eastern border line listed in the warranty deed. The old fence line does not completely enclose the property. Rather, it is a meandering old barbed wire fence.
¶ 8. On April 1, 1994, the Meeks hired Mike Goralczyk to survey the property line between the Meek property and the Ellison property. On January 25, 2000, the Meeks filed a complaint to remove the Bright/Ellison quitclaim deed from the record as a cloud upon the Meeks' title. This complaint further asked for compensation *Page 734 
for attorney's fees as well as surveyor's fees.
¶ 9. The Ellisons' answer to this complaint asserted that the Ellisons and their predecessors in title had acquired the property in question by adverse possession. The answer further asked the court to confirm title in the property in question to the Ellisons.
¶ 10. After hearing all of the evidence from both parties, the lower court found that the quitclaim deed was null and that no adverse possession occurred. Even though the lower court held in the Meeks' favor, it declined to award them compensation for attorney's fees and surveyor's fees.
 STANDARD OF REVIEW
¶ 11. This Court has a limited standard of review in examining and considering the decisions of a chancellor. McNeil v. Hester, 753 So.2d 1057
(¶ 21) (Miss. 2000). "The chancellor, as the trier of fact, evaluates the sufficiency of the proof based on the credibility of witnesses and the weight of their testimony." Fisher v. Fisher,771 So.2d 364, 367 (Miss. 2000) (citing Richard v. Richard, 711 So.2d 884, 888 (Miss. 1998)). A chancellor's findings will not be disturbed upon review by this Court unless the chancellor was manifestly wrong, clearly erroneous, or applied the wrong legal standard. Bank of Mississippi v.Hollingsworth, 609 So.2d 422, 424 (Miss. 1992). "The standard of review employed by this Court for review of a chancellor's decision is abuse of discretion." McNeil, 753 So.2d at 1063 (¶ 21). The standard of review for questions of law is de novo. Consolidated Pipe Supply Co.v. Colter, 735 So.2d 958, 961 (Miss. 1999).
 ANALYSIS I. DID THE LOWER COURT ERR IN ITS APPLICATION OF ADVERSE POSSESSION?
¶ 12. Mississippi Code Annotated § 15-1-13 (1) defines adverse possession as follows:
 Ten (10) years' actual adverse possession by any person claiming to be the owner for that time of any land, uninterruptedly continued for ten (10) years by occupancy, descent, conveyance, or otherwise, in whatever way such occupancy may have commenced or continued, shall vest in every actual occupant or possessor of such land a full and complete title, saving to persons under the disability of minority or unsoundness of mind the right to sue within ten (10) years after the removal of such disability, as provided in Section 15-1-7.
Miss. Code Ann. § 15-1-13 (1) (Supp. 2001).
¶ 13. Our supreme court has firmly established the following six essential elements which must be met in order to successfully make a claim of adverse possession: the property must be (1) under claim of ownership; (2) actual or hostile; (3) open, notorious, and visible; (4) continuous and uninterrupted for a period of ten years; (5) exclusive; and (6) peaceful. Sharp v. White, 749 So.2d 41 (¶ 7 — 8) (Miss. 1999); Stallings v. Bailey, 558 So.2d 858, 860 (Miss. 1990);Pieper v. Pontiff, 513 So.2d 591, 594 (Miss. 1987); Johnson v. Black,469 So.2d 88, 90 (Miss. 1985). The burden of proof is on the adverse possessor to show by clear and convincing evidence that each element is met. West v. Brewer, 579 So.2d 1261, 1262 (Miss. 1991).
¶ 14. In most cases, the underlying question is whether the possessory acts relied upon by the would-be adverse possessor are sufficient to put the record title holder upon notice that the lands are held under an adverse claim of ownership. Peagler v. Measells,743 So.2d 389, 390 (Miss.Ct.App. 1999). "[M]ere possession is not sufficient to satisfy the requirements *Page 735 
of open and notorious possession." Craft v. Thompson, 405 So.2d 128, 130 (Miss. 1981); see also People's Realty Dev. Corp. v. Sullivan,336 So.2d 1304 (Miss. 1976); Trotter v. Gaddis McLaurin, 452 So.2d 453
(Miss. 1984); Coleman v. French, 233 So.2d 796, 796 (Miss. 1970). The adverse possessor must "fly the flag over the land and put the true owner upon notice that his land [is] held under an adverse claim of ownership."Snowden McSweeny Co. v. Hanley, 195 Miss. 682, 687, 16 So.2d 24, 25 (1943). "[A] land owner must have notice, actual or imputable, of an adverse claim to his property in order for it to ripen against him, and the mere possession of land is not sufficient to satisfy the requirement of open and notorious." People's Realty, 336 So.2d at 1306.
¶ 15. "If a fence encloses the property for a period of at least ten years, under a claim of adverse possession, title vests in the claimant and possessor, even though the fence was subsequently removed or fell into disrepair." Roy v. Kayser, 501 So.2d 1110, 1112 (Miss. 1987) (quoting Cole v. Burleson, 375 So.2d 1046, 1048 (Miss. 1979)). The existence of an "old barbed wire fence," as sole evidence does not constitute adverse possession. Davis v. Clement, 468 So.2d 58, 63 (Miss. 1985). The permissive use by the possessor of the property in question defeats the claim of adverse possession. Gadd v. Stem, 459 So.2d 773, 774 (Miss. 1984). The actual "activity within the fenced area shows open and hostile possession." Pittman v. Simmons, 408 So.2d 1384, 1386 (Miss. 1982). However, the acts of cutting of timber and occasional pasturing of the land are insufficient to constitute open and hostile possession.Roy, 501 So.2d at 1112.
¶ 16. The Ellisons first assert that the chancellor did not properly apply adverse possession law when he found that the fence was not a boundary line. In making this assertion, the Ellisons cite several cases where the appellate court found that an old fence composed a boundary line which played a part in acquiring property by adverse possession. The Meeks respond that Mississippi law dictates that the presence of a fence is only evidence to be considered when considering the issue of the location of a property boundary line. It is true that the mere existence of a fence near the actual boundary line does not establish that the fence is the accepted boundary between the properties. Stringer v. Robinson, 760 So.2d 6, 10 (Miss.Ct.App. 1999);Davis, 468 So.2d at 60; Gadd, 459 So.2d at 775.
¶ 17. There are several problems with the Ellisons' contention that they gained ownership of the land in question by adverse possession. Most notable is their reliance on the old barbed wire fence. The Ellisons, who have the burden of proving by clear and convincing evidence that they have gained ownership by adverse possession, have not shown such evidence to establish that the fence ever enclosed the property, when the fence was erected, the property was exclusive to the Brights and Ellisons or that the party erecting the fence was making a claim of ownership.
¶ 18. The Ellisons also argue that the chancellor erred when he considered witness testimony in his determination of whether the Ellisons had gained the property in question by adverse possession. The chancellor sits as a fact-finder in resolving disputes and "is the sole judge of the credibility of witnesses." Murphy v. Murphy, 631 So.2d 812, 815 (Miss. 1994); Polk v. Polk, 559 So.2d 1048, 1049 (Miss. 1990). The chancellor was within his discretion in allowing the testimony that the Ellisons complain of in this issue.
¶ 19. Next, the Ellisons assert that the chancellor "did not correctly *Page 736 
understand nor apply the law as to how adverse possession and transfer or sale of land actually could be accomplished when the land might not be within the call of the deed of the party who was doing the adverse possessing." We can only attempt to interpret this assertion, as the argument is brief and vague. The Ellisons argue that the Brights, although mistaken, believed that the land in question was covered in their deed. The Brights held this belief as well as the possession of the land for the statutory period of ten years. Thus, the Meeks contend that although the Brights were mistaken that the land in question was within the calls of the deed, the Brights fulfilled the elements of adverse possession for the requisite period of time.
¶ 20. It is true that land can be adversely possessed due to the mistaken belief that it was within the calls of the deed and following possession. Alexander v. Hyland, 214 Miss. 348, 58 So.2d 826, 829 (1952). However, the problem with this theory is that there is a lack of convincing evidence to show that the Ellisons or any of their predecessors acquired the property by adverse possession, as we have stated above. It would be a stretch to find that any of the six elements necessary to gain ownership by adverse possession were met. Even if the Brights had been mistaken as to the borderline of their property, they did not "fly the flag" of ownership on the property in order to make a clear claim of ownership. Nor have the Ellisons shown that the fence ever enclosed the property, when the fence was erected, the property was exclusive to the Brights and Ellisons or that the party erecting the fence was making a claim of ownership. Further, the chancellor made a proper and fair application of adverse possession law to the case at hand.
¶ 21. The case at hand is reminiscent of Stewart v. Graber,760 So.2d 868 (Miss.Ct.App. 2000). While the Stewarts claimed that they used the contested area to enclose livestock, cut hay and garden, they did not meet the burden of proof that there was ever an enclosure. Id. at 869. The chancellor aptly found that even if livestock were permitted to graze on this area, cut hay and garden, occasional use of someone else's property without an enclosure does not pass the test of adverse possession. Id. Sporatic use of another's property does not constitute open and notorious possession. Cook v. Mason, 160 Miss. 811, 814,134 So. 139 (1931). The same is true in the case at hand.
¶ 22. The Ellisons also argue that the chancellor erred in holding that the Meeks "have fully sustained the allegations in their complaint and were entitled to the relief confirming title in them." The Ellisons go on to argue that the Meeks did not properly deraign title. The Meeks respond by pointing out that the Ellisons did not make an objection and, thus, failed to raise this issue at trial. A party cannot raise an issue for the first time on appeal. First Investors Corp. v. Rayner,738 So.2d 228, 239 (¶ 51) (Miss. 1999); Zimmerman v. Three Rivers,747 So.2d 853, 858 (¶ 16) (Miss.Ct.App. 1999). Therefore, this issue will not be considered. Regardless of this fact, the record reflects that the Meeks deraigned the title themselves in their pleadings.
 II. DID THE LOWER COURT ERR IN ALLOWING THE TESTIMONY OF MIKE GORALCZYK?
 ¶ 23. The Mississippi Rule of Evidence 702 states:
 [i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, *Page 737 
experience, training, or education, may testify thereto in the form of an opinion or otherwise.
M.R.E. 702.
¶ 24. The Ellisons complain that the chancellor erred when he allowed and considered the testimony of Mike Goralczyk as an expert. The Ellisons point to four specific instances that Goralczyk's expert testimony should not have been allowed and considered: "(1) his not showing how or what instruments were used nor if, in fact, they were proper under the circumstances; (2) as to the Ellisons' deed not closing and ignoring the basic law as to deeds involving measurements, distances and monuments; (3) declaring that the surveyor was an expert as to the depth of wire in trees without requiring any kind of predicate, history, or qualification; [and](4) he did not begin at an accepted point of beginning for his surveys."
¶ 25. The Meeks responded to the assertion involving the use of instruments by pointing out that Goralczyk did testify as to the calibration of his instruments to insure their accuracy. The Meeks also point out that despite a lengthy cross-examination, the Ellisons did not object to the testimony involving the instruments used. As we stated earlier, a party cannot raise an issue for the first time on appeal.First Investors Corp., 738 So.2d at 230; Zimmerman, 747 So.2d at 855. Therefore, this issue will not be considered.
¶ 26. As the Meeks point out, the assertion involving Goralczyk's testimony about the deed closing is merely a late attempt at discrediting the witness. The chancellor sits as a fact-finder in resolving disputes, and "is the sole judge of the credibility of witnesses." Murphy, 631 So.2d at 815; Polk, 559 So.2d at 1049. This is left to the chancellor's discretion, and we see no error in his judgment here.
¶ 27. The Meeks respond to the argument that Goralczyk's testimony involving tree growth by asserting that the chancellor allowed this testimony as the opinion of a lay person rather than expert testimony due to the fact that it was out of his field of expertise. It is up to the chancellor to decide the qualifications of experts. Couch v. City ofD'Iberville, 656 So.2d 146, 152 (Miss. 1999); Sheffield v. Goodwin,740 So.2d 854, 857 (¶ 10) (Miss. 1999); Seal v. Miller, 605 So.2d 240, 243 (Miss. 1992). In its answer to the Ellisons' objection to Goralczyk's testimony as to the tree growth, the chancellor stated: "I'm going to let him give his estimate based on his experience as a surveyor."
¶ 28. The Ellisons offered no argument or authority to support the fourth part of this issue. Failure to cite relevant authority obviates the appellate court's obligation to review such issues. Williams v.State, 708 So.2d 1358, 1362-63 (Miss. 1998); Grey v. Grey, 638 So.2d 488, 491 (Miss. 1994); McClain v. State, 625 So.2d 774, 781 (Miss. 1993);Smith v. Dorsey, 599 So.2d 529, 532 (Miss. 1992). Therefore, we will not consider it.
 III. DID THE LOWER COURT ERR IN ALLOWING HEARSAY EVIDENCE OF THE DECEASED MR. BRIGHT?
¶ 29. The Mississippi Rule of Evidence 803(3) states that:
 [a] statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will. *Page 738 
¶ 30. At trial, Mr. Meek offered the following testimony during direct examination:
 I would say between one and two years prior to Mr. Bright's death. I made no written memorandums. William [Bright] saw me up town one day and told me, `Buck [Meek], I need you to sell me a small amount of land over near my house because it comes very close to my house, and it would help me a lot if you will do it. The line comes very close to my house.' So I told him, `Well, let's go out there and see, William, where we — what you're talking about.' We got in our cars, and we drove out there and walked out to along that line there. We found the stake in front on the highway right-of-way, and it was true. Since he had expanded his house out toward the east, it was a lot closer to the line than it was. And then we went back to where he had constructed a dog kennel, and he told me, `I may have put this kennel on some of your property. Would you like for me to move it, or is it satisfactory with you for me to leave it here?' I said, `William, we need to get a survey made so we can see exactly where this line goes. Then I'll talk with you about trying to sell you some of this land.' He said, `Is it all right for me to leave this dog kennel here while we — although I know it's on your land, and I'm not trying to claim it,' he told me that. And I said, `Yes, that's fine. We need to get it surveyed as soon as possible so that we can come to an agreement on selling it to you.' And, as quite often happens, the time slipped by; and, the next thing I know, William was dead.
The Ellisons objected to this testimony, arguing that it was hearsay. The lower court overruled the objection, holding that the testimony fell within the M.R.E. 803(3) hearsay exception. Again, "[t]he chancellor, as the trier of fact, evaluates the sufficiency of the proof based on the credibility of witnesses and the weight of their testimony." Fisher, 771 So.2d at 367.
¶ 31. The Ellisons now assert that the statements made by the deceased Mr. Bright did not qualify as an exception to the hearsay rule under the "state of mind" exception. Mr. Meek testified about a conversation that he had with the deceased Mr. Bright. The Meeks argue that the conversation in question showed the intent, plan, motive and design of Mr. Bright. The Meeks further assert that his intent, plan, motive and desire was to acquire title to land by purchasing it from Mr. Meek rather than acquiring it by adverse possession. The chancellor did not abuse his discretion in allowing this hearsay testimony as the testimony presented was restricted to Mr. Bright's state of mind.
 CROSS-APPEAL DID THE ELLISONS SLANDER PROPERTY OWNED BY THE MEEKS, THUS ENTITLING THE MEEKS TO DAMAGES INCLUDING ATTORNEY'S FEES AND SURVEYOR'S FEES?
¶ 32. Slander of title "may consist of . . . conduct which bring[s] or tend[s] to bring in question the right or title of another to particular property." Walley v. Hunt, 212 Miss. 294, 54 So.2d 393, 396 (1951). See also Welford v. Dickson, 524 So.2d 331 (Miss. 1988). "The malicious filing of an instrument, known to be inoperative and disparaging the title to land in another, is a false and malicious statement for which damages, including attorneys fees, may be recovered."Walley v. Hunt, 212 Miss. 294, 54 So.2d 393, 396 (1951). See alsoDethlefs v. Beau Maison Dev. Corp., 511 So.2d 112 (Miss. 1987). The chancellor has substantial discretion in the matter of determining whether an assessment of damages is *Page 739 
warranted. Aqua-Culture Tech., Ltd. v. Holly, 677 So.2d 171, 185 (Miss. 1996) (citing Fought v. Morris, 543 So.2d 167, 173 (Miss. 1989)). We hold that the chancellor did not abuse his discretion in denying the Meeks' demand for damages.
¶ 33. THE JUDGMENT OF THE CHANCERY COURT OF WEBSTER COUNTY ISAFFIRMED AS TO DIRECT AND CROSS-APPEAL. ALL COSTS OF THE APPEAL AREASSESSED TO THE APPELLANTS.
McMILLIN, C.J., KING AND SOUTHWICK, P. JJ., LEE, IRVING, MYERS ANDBRANTLEY, JJ., CONCUR. BRIDGES AND CHANDLER, JJ., NOT PARTICIPATING.