GRIFFIS, P.J.,
for the Court:
¶ 1. Robert and Betty Moody and Sharon Cates[1] own adjoining lots in the Bud Isaiah Lake Subdivision in Itawamba County, Mississippi. This dispute arose over an action brought by the Moodys against Sharon to quiet and confirm title regarding an area encompassing the boundary line dividing their properties. The Chancery Court of Itawamba County ruled that the Moodys had gained ownership by adverse possession of a portion of the disputed property, originally owned by Sharon. The extent of the property awarded to the Moodys is at issue in the instant appeal. The chancellor found that only a portion of the area in dispute had been adversely possessed; therefore, she only awarded that portion to the Moodys. The Moodys have appealed arguing that the chancellor erred in failing to award the entire disputed area.
¶ 2. Finding no error, we affirm.
FACTS
¶ 3. The Moodys and Sharon own adjoining lots within their subdivision, and both lots consist of waterfront property on the southwest shore of Bud Isaiah Lake. In 1967, the Moodys purchased Lot 50. Within four years of purchase, the Moodys built a retaining wall, a sidewalk and patio, a fence, a well and well house, and a house on the property. In order to access the property, Robert built two driveways leading to the property, including a main driveway which passes through the area in dispute. The Moodys claim to have continuously used and maintained the disputed property since 1967.
¶ 4. In approximately 1980, Archie Cates purchased the adjoining property, Lot 51. Archie testified that he was aware that the Moodys had built a cabin and a well within the disputed area, but he never considered the Moodys to be building on his land. Archie testified that he continuously used the main driveway to access Lot 51. Archie acknowledged that there was an existing fence when he purchased the land, but he was uncertain as to the exact location of the fence. Archie stated that he used Lot 51 primarily for fishing and maintained the property during his ownership.
¶ 5. In 1998, Archie sold Lot 51 to Danny Howard Shefield. Shefield also testified to using the main driveway to access Lot 51. Shefield stated that the fence was built near the boundary line dividing Lot 50 and Lot 51, and the fence began at the lake and stretched approximately half the boundary line. Shefield testified that he *1247 maintained the property during his ownership.
¶ 6. In 2005, Shefield sold Lot 51 to Sharon, and Sharon began constructing a house. Problems began when the Moodys alleged that the cabin was being constructed too close to their lot line, in violation of the restrictive covenants. The Moodys had surveys completed on both properties, and the results of the surveys revealed that the Moodys had overestimated their property area by a tenth of an acre. As a result, the Moodys filed a complaint requesting the court to quit and confirm title.
¶ 7. The Moodys argued that the subdivision plat must contain a mistake because they believed their lot was larger than what is described within the plat. The focus of the dispute turned upon the location of two old iron pins found by Robert, which he described as the original pins designating the boundary line between the two properties. If the pins defined the boundary line, Lot 50 is larger than shown by the subdivision plat, and correspondingly, Lot 51 is smaller. Basically, the Mood-ys claim title to the property encompassed by the iron pins, including the main driveway. If the iron pins do not control the description of the lot, then the Moodys argue that they are entitled to ownership by adverse possession of the disputed area. Sharon answered and argued that the description of the lots, as set forth in the subdivision plat control the boundary line, and she filed a counter-complaint alleging ownership by adverse possession of the main driveway.
¶ 8. Two surveyors, Randy Boyd and Joe Mears, testified as to the possible discrepancy between the boundary line suggested by the two iron pins and the subdivision plat. Boyd used the iron pins for his survey and stated that the plat was incorrect in its description of the location of the pins. Mears, on the other hand, could not locate the iron pins and testified that his survey is consistent with the requirements of the plat description. Mears also acknowledged that the plat may contain an erroneous description.
¶ 9. The chancellor addressed the alteration of the subdivision plat, citing Mississippi Code Annotated section 19-27-31 (Rev.2003), and held that the description set forth in the recorded plat controls the description of the individual lots. Section 19-27-31 provides statutory procedures for altering or vacating a description within a platted area, and because the statutory procedures were not satisfied, the chancellor held that the description in the plat, rather than the location of pins, defined the property’s boundaries.
¶ 10. The chancellor then found that the Moodys had gained ownership by adverse possession of a portion of the disputed property and divided the property accordingly. The Moodys have appealed arguing that the chancellor erred in failing to award them the entire disputed area.
STANDARD OF REVIEW
¶ 11. “Chancellors are vested with broad discretion, and this Court will not disturb the chancellor’s findings unless the court’s actions were manifestly wrong, the court abused its discretion, or the court applied an erroneous legal standard.” Andrews v. Williams, 723 So.2d 1175, 1177 (¶ 7) (Miss.Ct.App.1998) (citations omitted). “When reviewing a chancellor’s decision, we will accept a chancellor’s findings of fact as long as the evidence in the record reasonably supports those findings. In other words, we will not disturb the findings of a chancellor unless those findings are clearly erroneous or an erroneous legal standard was applied.” Peagler v. Measells, 743 So.2d 389, 390 (¶ 6) (Miss.Ct.App.1999) (citation omitted). “The chan *1248 cellor, as the trier of fact, evaluates the sufficiency of the proof based on the credibility of witnesses and the weight of their testimony.” Ellison v. Meek, 820 So.2d 730, 734 (¶ 11) (Miss.Ct.App.2002) (citation omitted).
ANALYSIS
¶ 12. The Moodys argue that they are entitled to ownership by adverse possession of the entire disputed area of land rather than just the portion awarded by the chancellor. The Mississippi Supreme Court has identified six elements that are necessary to make a successful claim of adverse possession. The possession of the property must be: (1) under claim of ownership; (2) actual or hostile; (3) open, notorious, and visible; (4) continuous and uninterrupted for a period of ten years; (5) exclusive; and (6) peaceful. Ellison, 820 So.2d at 734 (¶ 13). The burden of proof is on the adverse possessor to show by clear and convincing evidence that each element is met. Id.
¶ 13. In this case, the chancellor found each element was satisfied, but for only a portion of the property in dispute. The chancellor determined that through adverse possession, the Moodys gained ownership of the portion of the property on which they constructed the well, well house, walkway with steps, retaining wall, and placed the fence posts. As for the remainder of the property, through which the main driveway passes, the Moodys failed to satisfy the necessary elements of adverse possession.

1. Claim of Ownership

¶ 14. “In most cases, the underlying question is whether the possessory acts relied upon by the would-be adverse possessor are sufficient to put the record title holder upon notice that the lands are held under an adverse claim of ownership.” Cook v. Robinson, 924 So.2d 592, 595 (¶ 12) (Miss.Ct.App.2006) (citation omitted). The chancellor held that the Moodys had established a claim of ownership as to a portion of the property, stating: “The Moody’s utilized the property as their own, and based on their position with regard to the displaced pins, believed the same was their property insofar as they utilized the same.”
¶ 15. The Moodys argue that they established a claim of ownership to the entire disputed area because they paid a higher price for their lot compared to the price of other lots within the subdivision under the assumption their lot was larger. This Court has held the purchase of property does not automatically establish a claim of ownership in property other than that described within the deed. See Niebanck v. Block, 35 So.3d 1260, 1264 (¶ 12) (Miss.Ct.App.2010).
¶ 16. The Moodys also claim there was a fence dividing the properties and that the construction of the fence is evidence of their claim of ownership. Even so, “the mere existence of a fence near the actual boundary line does not establish that the fence is the accepted boundary between the properties.” Ellison, 820 So.2d at 734 (¶ 16) (citations omitted).
¶ 17. In the instant case, the record reveals that the exact location of the fence is ambiguous and insufficient to prove to adverse possession. Stewart v. Graber, 760 So.2d 868, 869 (¶¶8-9) (Miss.Ct.App.2000). The owners proceeding Sharon testified to the existence of the fence, but they stated that it only spanned half of the alleged boundary line. There is no evidence that the fence ever enclosed or completely divided one property from another. Sharon testified that when they began clearing their lot to build their cabin, there was no fence or remnants of a fence, except for one post. Because there is no *1249 evidence to prove the location of the fence, there is no evidence to support the Mood-ys’ claim of ownership as to property allegedly divided by the fence. This element is not satisfied.

2. Actual or Hostile Possession

¶18. Actual possession is “effective control over a definite area of land, evidenced by things visible to the eye or perceptible to the senses.” Wicker v. Harvey, 937 So.2d 983, 993-94 (¶ 34) (Miss.Ct. App.2006) (quoting Blankinship v. Payton, 605 So.2d 817, 819-20 (Miss.1992)). The chancellor found that this element was satisfied and recognized that, “[t]he Mood-ys’[ ] actions, beginning in 1967 were done without permission from [Sharon], or her predecessors in title.” The main driveway, constructed by the Moodys, lies within the remainder portion of the disputed property. The record indicates that the main driveway was also constructed without permission from Sharon or her predecessors in title. Accordingly, this element is satisfied.

3. Open, Notorious, and Visible

¶ 19. A “land owner must have notice, actual or imputable, of an adverse claim to his property in order for it to ripen against him, and the mere possession of land is not sufficient to satisfy the requirement of open and notorious.” Scrivener v. Johnson, 861 So.2d 1057, 1059 (¶ 6) (Miss.Ct.App.2003) (citation omitted). An adverse possessor “must unfurl his flag on the land, and keep it flying, so that the (actual) owner may see, and if he will, that an enemy has invaded his domains, and planted the standard of conquest.” Wicker, 937 So.2d at 994 (¶ 35) (quoting Blan-kinship, 605 So.2d at 820).
¶ 20. The chancellor held that the Moodys satisfied the element of open, notorious and visible possession. “Since 1967, the Moodys utilized the driveway, constructed a well, well house, walkway with steps, retaining wall, and placed fence posts along the line in dispute, and maintained the same.” As to the remainder of the disputed property, there is no dispute that the main driveway was constructed by the Moodys, and it is visible to Sharon and all successive owners. This element is satisfied.
A Continuous Use or Possession
¶21. The chancellor found that: “Beginning in 1967, the Moodys constructed the driveway, well, well house, walkway with steps, retaining wall and placed the fence posts, and continued to use the same without interruption for approximately 28 years, until the dispute precipitating this action in 2005.” The record indicates that the main driveway was also constructed in 1967, and the Moodys used the main driveway continuously since the date of construction. This element is satisfied.

5. Exclusive Use or Possession

¶ 22. The chancellor held that: “No proof was presented to show [Sharon], or her predecessors in title, utilized the particular portion of property in dispute nor interfered with the Moodys’[ ] use thereof prior to the present dispute.” The record indicates that the chancellor was referring to only a portion of the disputed property, the portion encompassing the well, well house, walkway with steps, and retaining wall. The remainder of the property was used by both the Moodys and Sharon. The main driveway is within the remainder of the disputed property, and the Moodys and Sharon, and all previous owners of Sharon’s property, testified to using the driveway. Furthermore, the previous owners of Lot 51 and Sharon testified to utilizing/maintaining the remainder of the disputed property and also paying taxes on *1250 the property. Only the portion granted by the chancellor to the Moodys by adverse possession was exclusively used. Thus, this element is not satisfied.

6. Peaceful

¶ 23. There is no dispute as to this element. Both parties agree that ownership of them adjoining lots was peaceful until this present dispute arose.
¶ 24. For the foregoing reasons we find that the Moodys have failed to satisfy each necessary element of adverse possession. Accordingly, we affirm the chancellor’s judgment.
¶ 25. THE JUDGMENT OF THE ITAWAMBA COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
LEE, C.J., IRVING, P.J., BARNES, ISHEE, ROBERTS AND MAXWELL, ' JJ., CONCUR. CARLTON, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. MYERS, J., NOT PARTICIPATING.

. The case was originally filed against Phillip and Sharon Cates. The Cates have separated, and Phillip is no longer a party to this suit.