RUSSELL, J.,
for the Court:
¶ 1. On October 19, 2010, the Chickasaw Chancery Court entered a judgement in favor of Alford Bell and Sheila Bell, establishing a boundary line between the property owned by the Bells and that owned by Larry Taylor at the point that is halfway between the center line of the ditch and then running east to the fence post that is set on the north end of the disputed property and then let the line run due south from said fence post with the Bells owning all land east of said line and Taylor owning all land west of said line. On November 17, 2010, Taylor appealed the chancellor’s determination that the Bells had adversely possessed the subject property. Finding no error, we affirm.
STATEMENT OF FACTS
¶ 2. On July 2,1973, the Bells obtained a warranty deed for real estate located at 237 Pittsboro Street, Chickasaw County, Mississippi. In 1984, Springer and Associates surveyed the property for the Bells because the Bells were considering having a fence built around their home on the property. The survey revealed that the Bells’ home encroached upon the adjoining lot then owned by L.O. Freeman and Paul Freeman.[1]
¶ 3. In August 2004, Terry Taylor (Terry) obtained a warranty deed to the property from Mrs. L.O. Freeman. According to Terry, Freeman told him that the Bells were “over on it,” referring to the property he had purchased. On October 16, 2008, Terry deeded the property to his brother, Taylor. Terry testified that he lives directly across the street from the Bells and has power of attorney to act for his brother regarding the subject property. Taylor lives in California and uses the house that sits on the subject property as rental property.
¶ 4. On December 4, 2009, the Bells filed a complaint to confirm title and remove cloud. In April 2010, Terry constructed a fence to deny the Bells access to the subject property. On April 14, 2010, Taylor filed an answer and counter-complaint contending that the Bells were not entitled to adverse possession and that he held title to and has paid taxes on the property.
¶ 5. On April 16, 2010, the Bells filed an answer to the counter-complaint. On September 9, 2010, a bench trial was held. On *1137 October 19, 2010, the Chickasaw County Chancery Court found for the Bells and entered a judgment establishing a boundary line on the property between the property owned by the Bells and that owned by Taylor. On November 17, 2010, Taylor filed his notice of appeal.
DISCUSSION
¶ 6. This Court follows a limited standard of review when addressing appeals from a chancery court. Buford v. Logue, 832 So.2d 594, 600 (¶ 14) (Miss.Ct. App.2002) (citing Reddell v. Reddell, 696 So.2d 287, 288 (¶ 1) (Miss.1997)). We will not disturb the findings of a chancellor unless the chancellor was manifestly wrong, clearly erroneous, or applied an erroneous legal standard. Id. Great deference is given to the chancellor as both finder of fact and trier of law. Id. “If there are no specific findings of fact, the appellate court will assume that the trial court has made determinations of fact sufficient to support its judgment.” Id. (citing Pace v. Owens, 511 So.2d 489, 492 (¶ 3) (Miss.1987)). “The appellate court will also look to the evidence and determine whether or not the statement of facts justify the decree.” Id. (citing Greenlee v. Mitchell, 607 So.2d 97, 105 (¶ 1) (Miss. 1992)).
¶ 7. Adverse possession is defined in Mississippi Code Annotated section 15 — 1— 13(1) (Rev. 2003) as follows:
Ten (10) years actual adverse possession by any person claiming to be the owner for that time of any land, uninterruptedly continued for ten (10) years by occupancy, descent, conveyance, or otherwise, in whatever way such occupancy may have commenced or continued, shall vest in every actual occupant or possessor of such land a full and complete title, saving to persons under disability of minority or unsoundness of mind the right to sue within ten (10) years after the removal of such disability, as provided in [Mississippi Code Annotated] [s]ection 15-1-7. However, the saving in favor of persons under disability of unsoundness of mind shall never extend longer than thirty-one (31) years.
¶ 8. Our supreme court has established six elements that must be met for a claim of adverse possession: “the property must be (1) under claim of ownership; (2) actual or hostile; (3) open, notorious, and visible; (4) continuous and uninterrupted for a period of ten years; (5) exclusive; and (6) peaceful.” Cook v. Robinson, 924 So.2d 592, 595 (¶11) (Miss.2006). “The burden of proof is on the adverse possessor to show by clear and convincing evidence that each element is met.” Ellison v. Meek, 820 So.2d 730, 734 (¶4) (Miss.2002).
¶ 9. The Bells submit that they possessed the land under an adverse claim of ownership because they have maintained the subject property since April 1974 when they moved in, and they have continued to maintain the property until Terry erected the fence in 2010. Alford Bell specifically testified that he planted shrubbery, mowed the grass, and landscaped the property. He further testified that he had asked Freeman in November 1984 about purchasing the property after a survey revealed that his property encroached on the land then owned by Freeman. However, Freeman was not interested in selling. Instead, she preferred to “leave it like it is.” According to Alford, this meant that they should continue to maintain the property, which they did until the fence was erected in 2010.
¶ 10. The Bells introduced photographs revealing that the subject property is a strip of land that consists of a part of the Bells’s home, shrubbery, a yard, and a ditch. Sheila Bell testified that she never *1138 asked Freeman for permission to use the property nor did she hear Alford talk to Freeman about using the property. Sheila further testified that she only wanted the fence removed from her property.
¶ 11. Terry testified he had a survey performed in 2009 to determine exactly where the property line was located after learning that his neighbor was having a survey performed on his property. It was around this time that Alford made Terry an offer to buy the subject property. Shortly after declining Alford’s offer, Terry explained, he erected the fence so that the Bells could no longer cut the property.
¶ 12. “In most cases, the underlying question is whether the possessory acts relied upon by the would-be adverse possessor are sufficient to put the record title holder upon notice that the lands are held under an adverse claim of ownership.” Id. at 734 (¶ 14). “[M]ere possession is not sufficient to satisfy the requirements of open and notorious possession.” Id. at 734-35 (¶ 14). “The adverse possessor must ‘fly the flag over the land and put the true owner upon notice that his land [is] held under an adverse claim of ownership.’ ” Id. at 735 (¶ 14).
¶ 13. While Taylor contends that he holds title to and pays taxes on the subject property, the question becomes whether or not he was put on notice that the land was held under an adverse claim of ownership. Terry testified that Freeman told him at the time he purchased the property in 2004 that the Bells were “over on it.” Thus, Taylor was on notice that his land was held under an adverse claim of ownership.
¶ 14. This Court has long held that “[o]nce adverse possession has begun, the record title owner cannot stop the running of the period merely by granting permission.” Gillespie v. Kelly, 809 So.2d 702, 710 (¶ 28) (Miss.2001). It is undisputed that the Bells began them adverse possession of the subject property in April 1974 without permission from the then-title owners, the Freemans. The November 1984 conversation with Freeman about purchasing the property was more than ten years from the beginning of the possession and title had already been vested in the Bells. Once adverse possession created an easement, “it cannot be lost by the record title owner granting permission.” Id. It is well-settled Mississippi law that once the elements of adverse possession have been satisfied, a full and complete title is vested in the adverse possessor. Levy v. Campbell, 200 Miss. 721, 728, 28 So.2d 224, 226 (1946). Further, this Court has held that once title has been acquired by adverse possession, “it is not relinquished merely by the new owners indicating a belief in the former owner’s title.” Gillespie, 809 So.2d at 711 (¶ 32). Title can be lost only by proper transfer, such as deed, will, or intestacy, or by another period of possession ripening title in a new adverse user. Id. Any offer by Alford to pay for the property following the survey in 1984 or 2009 is of no consequence since the Mississippi Supreme Court has held that an offer to pay for land after an adverse possession title has ripened is not a disclaimer of title. Rotenberry v. Arnold, 212 Miss. 564, 566, 55 So.2d 141, 142 (1951).
¶ 15. After hearing the testimony and examining the exhibits, the court urged the parties to try to resolve the matter themselves by either dividing the property or buying the other person’s interest. The parties could not reach an agreement. Thus, the chancellor found that the Bells did in fact adversely possess the property and divided the property accordingly.
¶ 16. There is substantial evidence in the record to support the chancellor’s find *1139 ings. As such, we cannot conclude that the chancellor was clearly erroneous or that he applied an improper legal standard. Accordingly, we find no error in the chancellor’s decision and affirm the chancellor’s judgment.
¶ 17. THE JUDGMENT OF THE CHANCERY COURT OF CHICKASAW COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, MAXWELL AND FAIR, JJ., CONCUR. CARLTON, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.

. L.O. received title to the property when Paul died some time prior to the transfer of property to Terry in 2004.