# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-CA-00301-COA

IN THE MATTER OF THE ESTATE OF LISA HOLLY SOJOURNER, DECEASED: SUSAN SOJOURNER CAMPBELL

**APPELLANT**

v.

BARBARA KAREN SOJOURNER

**APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 02/12/2024 |
| TRIAL JUDGE: | HON. JOSEPH PRESTON DURR |
| COURT FROM WHICH APPEALED: | COPIAH COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | OLEN C. BRYANT JR. |
| | TIMOTHY LAVELLE RUTLAND |
| ATTORNEY FOR APPELLEE: | MICHELE DAWN BIEGEL |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS, AND ESTATES |
| DISPOSITION: | AFFIRMED - 10/21/2025 |
| MOTION FOR REHEARING FILED: | |

**BEFORE BARNES, C.J., EMFINGER AND WEDDLE, JJ.**

**WEDDLE, J., FOR THE COURT:**

¶1. Susan Sojourner Campbell appeals from a Copiah County Chancery Court's judgment admitting into probate the decedent's purported will executed in 1999, the first codicil executed in 2001, and the second codicil executed in 2013. The chancellor also appointed Barbara Karen Sojourner ("Karen") as executor of the decedent's will. On appeal, Susan asserts that the chancellor erred by (1) granting a motion in limine to exclude evidence of the decedent's alleged diminished mental capacity, (2) failing to consider evidence of the lack of credibility of certain witnesses, and (3) finding Karen sufficiently rebutted the presumption of undue influence in execution of the second codicil. Finding no error, we

affirm.

**FACTS**

¶2. In April 1998, a conservatorship was established over the decedent, Lisa Holly Sojourner, and her estate. In July 1999, Lisa executed a last will and testament. She devised her interest in all her real property to her nieces, Karen's daughters Nicole Kueck and Claire Sojourner in equal shares. She devised the remainder of her estate to Nicole, Claire, her mother Barbara Sojourner, and her grandniece Hannah Sojourner in equal shares. In June 2001, Lisa executed a codicil to her will. She changed her alternate executor from J.B. Rus Sykes III, an attorney who helped her with her first will, to attorney Elise B. Munn.

¶3. In 2012, Lisa was diagnosed with stage 3 colon cancer, and Karen became Lisa's primary caregiver. During this time, Lisa, Karen, and their sister, Susan, had a legal dispute over land acquired from their father. Karen retained attorney G. Michael Massey to represent her and Lisa in the dispute.

¶4. In 2013, Lisa was diagnosed with stage-4 liver cancer. On June 27, 2013, Lisa executed the second codicil to her will.[1] The second codicil devised Lisa's interest in all her real property to Karen, Nicole, and Claire in equal shares. Lisa also left $5,000 to each of the following: her nephew John Parker Campbell and her niece Dabney Campbell. Additionally, Lisa devised equal shares of the remainder of her property to Karen, Nicole, Claire, Hannah, and Barbara.

¶5. In January 2014, due to her declining health, Lisa moved into Karen's house. In April

---

[1] Massey prepared this codicil.

2014, Munn prepared a second will for Lisa. In the new will, Lisa left $1,000 to John Parker, Dabney, Nicole, Hannah, and the Madison Animal Rescue Kennel. In addition, Lisa left the remainder of her property to Karen and Claire.

¶6. On June 28, 2015, at the age of 53, Lisa passed away. On September 2, 2015, Susan filed a petition for letters of administration and to determine heirship. That same month, Karen filed a petition to probate the second will, which the chancery court ultimately set aside on October 21, 2016. The chancellor found that a confidential and fiduciary relationship existed between Lisa and Karen, there was clear and convincing evidence of a presumption of undue influence as well as actual evidence of undue influence by Karen in procuring the second will, and Karen failed to overcome either the presumption or the actual evidence of undue influence. This Court found that substantial credible evidence supported the chancellor's findings and affirmed the chancellor's judgment on March 27, 2018. *Sojourner v. Campbell*, 269 So. 3d 259, 266 (¶35) (Miss. Ct. App. 2018).

¶7. On September 2, 2021, Karen sought probate of Lisa's 1999 will and the first and second codicils, entry of letters testamentary, and relinquishment by Susan of certain possessions and property that allegedly belonged to Lisa. On September 21, 2021, Susan filed her caveat against probate and sought to have the codicils to the will set aside as void.

¶8. A hearing was held on September 11, 2023, and the chancellor entered his judgment on February 12, 2024. The chancellor held that although he found a presumption of undue influence had been minimally satisfied with regard to the execution of the second codicil, he also found that Karen had sufficiently rebutted the presumption. Therefore, the chancellor

3

admitted to probate the 1999 will, the first codicil, and second codicil for probate, and he appointed Karen as executor of Lisa's will. Aggrieved, Susan appeals.

## STANDARD OF REVIEW

¶9.     "A chancellor's findings of fact will not be disturbed unless they are manifestly wrong or clearly erroneous, or unless the chancellor applied an erroneous legal standard. If the chancellor's findings are supported by substantial, credible evidence in the record, [our appellate courts] will not reverse." *Wright v. Roberts*, 797 So. 2d 992, 997 (¶14) (Miss. 2001) (quoting *In re Estate of Grantham*, 609 So. 2d 1220, 1223 (Miss. 1992)).

## DISCUSSION

### I.     Exclusion of Evidence Regarding Lisa's Mental Capacity

¶10.     Susan asserts that the chancellor erred by granting a motion in limine to exclude evidence of Lisa's diminished mental capacity and failed to consider Lisa's intelligence quotient and other cognitive disabilities.[2] However, Susan does not explain or brief the issue beyond listing it in her statement of issues. "The law is well established that points not argued in the brief on appeal are abandoned and waived." *In re Conservatorship of Redd v. Redd*, 332 So. 3d 250, 258 (¶29) (Miss. 2021) (quoting *Arrington v. State*, 267 So. 3d 753, 756 (¶8) (Miss. 2019)). "Failure to cite relevant authority obviates the appellate court's obligation to review such issues." *Id*. In her brief, Susan failed to cite any legal authority or provide any argument in support of her assertion that the chancellor erred by granting a

---

[2] The chancellor granted the motion in limine to exclude Lisa's intelligence or mental aptitude test dated May 31, 1978, which had been conducted over thirty-five years before the second codicil was executed.

motion in limine. Accordingly, we find this issue is waived.

## II. Witness Credibility

¶11. Susan contends that the chancellor committed manifest error in determining the credibility of certain witnesses. "The chancellor, as the trier of fact, evaluates the sufficiency of the proof based on the credibility of the witnesses and the weight of their testimony." *Catlett v. Catlett*, 358 So. 3d 366, 375 (¶44) (Miss. Ct. App. 2023) (quoting *Ellison v. Meek*, 820 So. 2d 730, 734 (¶11) (Miss. Ct. App. 2002)). "We also recognize that because a chancellor is the only one to hear the testimony of witnesses and observe their demeanor, he or she is in the best position to evaluate a witness's credibility." *Atkins v. Moore*, 352 So. 3d 217, 226 (¶38) (Miss. Ct. App. 2022) (quoting *Russell v. Allen (In re Allen)*, 962 So. 2d 737, 741 (¶14) (Miss. Ct. App. 2007)). "[T]his [C]ourt may not intercede simply to substitute our collective opinion for that of the chancellor." *In re Est. of Hitt v. Hart*, 338 So. 3d 681, 691 (¶34) (Miss. Ct. App. 2023) (quoting *Chaney v. Chaney (In re Est. of Chaney)*, 235 So. 3d 120, 122 (¶7) (Miss. Ct. App. 2017)). Susan specifically contends that the chancellor erred by finding that the testimony of Massey and Karen was credible, and Renee, a former friend of Karen, was not credible.

¶12. Susan argues that Massey made conflicting statements in regard to who paid for his fees and his knowledge of Lisa's caregivers. During the trial, Massey testified about his interactions with Lisa while he represented her in the land dispute and while he prepared her second codicil. Massey recalled how upset Lisa was with the outcome of the land dispute, and Massey said it was clear that Lisa was of sound mind even after her diagnosis. Massey

added that he was under the impression that Lisa was taking care of herself and living independently when the second codicil was executed. As it pertained to his payment, Massey stated that he believed Karen sold a tract of property to pay his fees for the land dispute, but he did not bill Lisa for preparing the second codicil. Susan also pointed out Massey's testimony that he did not have knowledge of things that transpired between Karen and Lisa outside his presence. However, Massey could only testify to matters within his personal knowledge. The chancellor opined that Massey was a credible witness and "an independent third party who was in a position to observe the testatrix at the crucial time of execution of the testamentary documents."

¶13.    In support of Susan's argument that Karen lacked credibility, she relies on this Court's determination in the previous trial and appeal. In the prior matter, Susan challenged the validity of a second will drafted in April 2014. The chancellor in that matter found, and we affirmed, that Karen lacked credibility, and she did not rebut the presumption of undue influence. Although the chancellor took judicial notice of the prior judgments in assessing the credibility of the witnesses, the chancellor held that Karen was a credible witness and noted how transparent Karen was about Lisa's health struggles and mental challenges.

¶14.    Next, Susan asserts that the chancellor gave no details or rational basis in determining that Renee's testimony lacked credibility. Renee testified about different encounters she had with Lisa, Karen, and Susan, as well as conversations she and Karen had when they were friends. In his judgment, the chancellor did not find that Renee was a credible witness and acknowledged "the emotional nature of the testimony" and "the potential for bias given the

6

fractured nature of [Karen and Renee's] friendship."

¶15. Finding substantial credible evidence to support the chancellor's determination of witness credibility, we affirm.

### III. Presumption of Undue Influence

¶16. On appeal, Susan alleges that Karen did not prove any elements required to overcome the presumption of undue influence. Testimony and evidence presented at trial established that there was a presumption of undue influence. To overcome the presumption of undue influence, the burden shifted to Karen to show by clear and convincing evidence: (1) she acted in good faith; (2) Lisa "had full knowledge and deliberation" in executing the will; and (3) Lisa exhibited "independent consent and action." *See Noblin v. Burgess*, 54 So. 3d 282, 288 (¶19) (Miss. Ct. App. 2010). The chancellor held that Karen acted in good faith, Lisa had full knowledge and deliberation in executing the second codicil, and there was testimony to attest to Lisa's independent decision-making about the execution of the second codicil.

¶17. Susan contends that "Karen was clearly the impetus for Lisa changing her will." Notably, Susan relies on Renee's testimony, which the chancellor found unreliable because of her relationship with Karen. Massey and Karen both testified that they did not have any discussions regarding Lisa's second codicil. Massey added that at the one in-person meeting he and Lisa had about the second codicil, Karen allowed Lisa to trail behind her to the appointment, but Karen never came inside. The evidence supports a finding that Karen acted in good faith.

¶18. Susan also argues that Lisa was a vulnerable adult and susceptible to influence by

others; therefore, she did not have full knowledge and deliberation in executing the will. To refute this claim, Karen offered medical expert testimony of Dr. Mark Webb to prove Lisa had the mental capacity to execute the second codicil. After reviewing Lisa's medical records and having conversations with Lisa's family members, Dr. Webb contended that Lisa did have the mental capacity to execute the second codicil in June 2013. In her brief, Susan pointed out the existence of Lisa's conservatorship over her and her estate. However, the mere existence of a conservatorship does not restrict the right or competency to execute a will, provided the individual is of sound mind at the time of execution. *See Mask v. Elrod (In re Est. of Mask)*, 703 So. 2d 852, 856 (¶18) (Miss. 1997). Additionally, Dr. Webb testified that knowing there was a conservatorship would not change his opinion because "[t]here would be notations in the record that the patient was weak, [the] patient has trouble understanding, [the] patient has poor concentration, [the] patient doesn't understand, [or] I've got to confer with [the] conservator. None of that is said in [Lisa's] records." The evidence supports the finding that Lisa "had full knowledge and deliberation" in executing the will.

¶19. Lastly, Susan alleges that because Karen paid Massey, Lisa did not receive independent advice. It is undisputed that Karen hired Massey to represent her and Lisa in the land dispute. However, there is no evidence or testimony that anyone other than Lisa had direct involvement in the execution of the second codicil. Massey's testimony that Lisa's decisions were entirely hers is supported by the testimony of his paralegal, Amy Dickinson, who was also a witness to the execution of the second codicil. Amy testified that when Lisa came into the office alone to discuss and sign the second codicil, she seemed to understand

what she was signing. The evidence supports the finding that Lisa exhibited independent consent and action.

¶20. After our review of the record, we find substantial credible evidence supports the chancellor's finding that Karen overcame the presumption of undue influence.

## CONCLUSION

¶21. The record before us contains substantial credible evidence to support the chancellor's findings. Therefore, we affirm the chancellor's judgment.

¶22. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, LAWRENCE, McCARTY, EMFINGER AND LASSITTER ST. PÉ, JJ., CONCUR.**