ISHEE, J.,
for the Court:
¶ 1. In 2011, the Jones County Chancery Court issued a final judgment regarding child support and child custody of Ronald and Stacy Jordan’s minor child, Joshua, following the Jordans’ 2010 divorce. The chancery court awarded primary physical custody of the child to Stacy, with the parties sharing joint legal custody. Ronald was granted visitation rights. The chancery court also ordered Ronald to contribute to Stacy’s attorney’s fees. Ronald filed a motion to alter or amend the final judgment or, in the alternative, for a new trial. The motion was denied. Aggrieved, Ronald appeals. Finding no error, we affirm.
*1132 STATEMENT OF FACTS AND PROCEDURAL HISTORY
¶ 2. The Jordans were married in 2007, and Stacy gave birth to their son in November 2009. The couple separated prior to Joshua’s birth, and Stacy filed for divorce in December 2009. After a trial, the divorce was finalized in 2010 when the chancery court issued its findings of fact and conclusions of law.
¶ 3. The chancery court noted that testimony provided at trial did not indicate that either parent was unfit or lacked parenting skills. Notably, Stacy’s ex-husband, Kevin McQuirter, testified that she is a good mother and that he is very pleased with the mothering she provides to McQuirter and Stacy’s two children, who reside in Stacy’s home. In sum, the chancery court stated that neither parent “was deficient in most of the [Albright ] factors. [The parties’] disagreement is that Ronald asks ... to [be awarded] joint physical custody of Joshua[,] and Stacy argues the opposite[ ].”
¶ 4. The chancery court determined that the parties were neutral with regard to all Albright[1] factors except for three: (1) age of the child, (2) continuity of care prior to the separation, and (3) employment responsibilities. At the time of the chancery court’s findings in February 2011, Joshua was just over one year old. Since Joshua was, and is, “of tender years,” the chancery court determined that this Albright factor favored Stacy. Additionally, since Stacy had been Joshua’s primary caregiver since he was born, the continuity-of-care factor also favored Stacy.
¶ 5. Stacy was a stay-at-home mother from the time Joshua was born until the chancery court entered its findings. However, her intention had always been to return to work. Stacy had been hired for work, but had not yet started her job. As such, her future employer testified on her behalf and stated that Stacy’s work schedule and environment would be extremely flexible. Stacy would be able to bring Joshua to work with her every day. By contrast, Ronald has a mandatory forty-hour work week that often requires additional hours. Although his work week is condensed to four days instead of five, his job as an officer with the Mississippi Department of Marine Resources requires him to travel often. Furthermore, Ronald admitted that he would not be able to take Joshua to work with him. Regardless, Ronald stated he does not think his work environment would be a suitable daily location for Joshua. Thus, the chancery court found the employment-responsibilities factor favored Stacy.
¶ 6. Finally, Stacy testified as to her inability to pay her attorney’s fees. Since she is a stay-at-home mother, she has no source of income. Despite the fact that Ronald has a job, he and Stacy have had to borrow money from family members to pay for their respective attorneys’ fees. However, Stacy testified regarding Ronald’s “excessive” filings, which she claims were meritless and have increased her attorney’s fees substantially. Accordingly, the chancery court awarded Stacy a portion of her attorney’s fees.
¶ 7. Soon after the chancery court entered its findings of fact and conclusions of law, Ronald filed a motion for a new trial, to correct a mistake, and to amend the findings of fact and conclusions of law. After reviewing Ronald’s motion, oral evidence, and documentary evidence, the chancery court entered a final judgment with regard to child custody and attorney’s fees, among other issues. In its order, the chancery court granted joint legal custody *1133 to both parties but awarded primary physical custody to Stacy. Ronald was awarded visitation.
¶ 8. Ronald’s visitation schedule included every other weekend and one day during each week. During Christmas holidays, Stacy and Ronald were granted one week each during the week before and the week after Christmas day. The week each party was granted alternated every year. Thanksgiving holidays also alternated between the parties each year, as did Joshua’s school’s spring holidays. Ronald was granted Father’s Day, and Stacy was granted Mother’s Day. The party not having custody of Joshua on his birthday was granted visitation from 4:00 p.m. until 7:00 p.m. on that day. Additionally, Ronald was granted two weeks and one extra weekend during the child’s summer vacation until Joshua reaches the first grade. Once he reaches the first grade, the parties were ordered to alternate custody during the summer vacation on an every-other-week schedule.
¶ 9. Finally, Ronald was ordered to contribute $8,418.14 toward Stacy’s $8,418.14 in attorney’s fees. This amount was ordered to be paid to Stacy in increments of $100 per month until paid in full. Ronald timely filed an appeal challenging the chancery court’s award of primary physical custody, the award of visitation, and the award of attorney’s fees.
DISCUSSION
¶ 10. “[W]hen considering the decisions of a chancellor on appeal, this Court has a limited standard of review.” In re the Matter of the Conservatorship of the Estate of Loyd, 868 So.2d 363, 367 (¶ 11) (Miss.Ct.App.2003) (citing McNeil v. Hester, 753 So.2d 1057, 1063 (¶21) (Miss.2000)). “We will not disturb the findings of a chancellor unless the chancellor was manifestly wrong, clearly erroneous, or applied an erroneous legal standard.” Taylor v. Bell, 87 So.3d 1134, 1137 (¶ 6) (Miss.Ct.App.2012) (citing Buford v. Logue, 832 So.2d 594, 600 (¶ 14) (Miss.Ct.App.2002) (citation omitted)).
I. Custody
¶ 11. Ronald first challenges the chancery court’s award of physical custody to Stacy. The case of Albright v. Albright, 437 So.2d 1003 (Miss.1983), provides the requisite test for determining child custody in custody disputes. Ultimately, the “polestar consideration in child custody cases is the best interest and welfare of the child.” Albright, 437 So.2d at 1005.
¶ 12. The Albright test weighs the following factors:
Age[,] ... health, and sex of the child; a determination of the parent that has had the continuity of care prior to the separation; which has the best parenting skills and which has the willingness and capacity to provide primary child care; the employment of the parent and responsibilities of that employment; physical and mental health and age of the parents; emotional ties of parent and child; moral fitness of parents; the home, school[,] and community record of the child; the preference of the child at the age sufficient to express a preference by law; stability of home environment and employment of each parent[;] and other factors relevant to the parent-child relationship.

Id,

¶ 13. Ronald specifically challenges the chancery court’s order by asserting that the chancellor failed to make specific findings of fact as required by law. See Powell v. Ayars, 792 So.2d 240, 243 (¶ 5) (Miss.2001). However, a review of the chancery court’s order belies Ronald’s claim. The chancery court addressed four Albright *1134 factors that favored Stacy and further stated the remaining Albright factors were neutral.
¶ 14. With regard to the age, health, and sex of the child, the chancery court recognized that Joshua is a child of tender years, and although Ronald has shown that he can care for the child over a weekend, Stacy’s involvement in Joshua’s life at this age is paramount. In relation to Stacy’s parenting role at this stage, the chancery court also noted that Stacy has been Joshua’s primary caregiver since his birth, with Ronald only having weekend visitations. As such, Joshua has been accustomed to Stacy providing the continuity of primary care for him since his birth.
¶ 15. Additionally, Stacy’s employment circumstances are far more favorable than Ronald’s. The chancery court acknowledged that Ronald has a full-time job requiring a mandatory forty-hour work week with frequent overtime hours and travel. By contrast, Stacy is currently a stay-at-home mother. However, her future employer testified as to Stacy’s flexibility in her job and her ability to bring Joshua to work with her. Ronald admitted that he could not bring Joshua to work with him and that his work environment would not be conducive to a child. Ronald was also unable to provide a solution to how he would care for Joshua during the work week if he receives physical custody. Accordingly, the chancery court did not err in finding that Stacy is favored with regard to employment responsibilities, the willingness and capacity to provide primary child care, and stability of the home environment and employment.
¶ 16. With regard to parenting skills and moral fitness, while neither party was shown to be lacking in either category, Stacy’s ex-husband testified as to his satisfaction with Stacy’s parents skills for their two children, who reside with Stacy. Since Stacy already has these two children for whom she continues to care, she has more experience with raising a child. Furthermore, her ex-husband’s testimony provides support for her capabilities as a mother.
¶ 17. Finally, the child’s age negates several of the factors, including the child’s preference and the child’s home, school, and community record. Thus, we agree with the chancery court’s determination that the remaining Albright factors favor neither party. As such, we find no reversible error in the chancery court’s determination of custody. This issue is without merit.
II. Visitation
¶ 18. We next address Ronald’s claim that he did not receive sufficient visitation. Ronald’s visitation comprises the following:
(1) Every other weekend;
(2) One weekday each week;
(3) One week during the Christmas holidays;
(4) Thanksgiving holidays every other year;
(5) Father’s Day;
(6) 4:00 p.m. until 7:00 p.m. on Joshua’s birthday if Ronald does not have custody on that day;
(7) Two weeks and one extra weekend during the summer until Joshua reaches the first grade; and
(8) Every other week during Joshua’s summer vacation after he reaches the first grade.
¶ 19. Ronald’s entire argument regarding this issue is comprised of one paragraph. Therein, he specifically complains that the chancery court “failed to address holiday or extended summer visitation.” To the contrary, the chancery court ade *1135 quately discussed holidays and summer vacations. The chancellor provided Ronald substantial holiday visitation and made specific provisions for Thanksgiving, Christmas, Father’s Day, and Joshua’s birthday. Additionally, not only did the chancellor grant Ronald current summer visitation, he even addressed Joshua’s summer vacation after he reaches of school age. This issue is without merit.
III. Attorney’s Fees
¶ 20. Finally, Ronald asserts that the chancery court erred in granting Stacy attorney’s fees. We have held that “unless the chancellor is manifestly wrong, his decision regarding attorneyfs] fees will not be disturbed on appeal.” Dunn v. Dunn, 609 So.2d 1277, 1287 (Miss.1992) (citation omitted). An award of attorney’s fees should be “fair and should only compensate for services actually rendered after it has been determined that the legal work charged for was reasonably required and necessary.” Id. at 1286 (citation omitted).
¶ 21. Here, Ronald has failed to present any evidence that the attorney’s fees in question fall outside of the purview of awardable attorney’s fees. The record indicates the fees in question were rendered by Stacy’s attorney during the litigation of the case at hand. Furthermore, the record substantiates Stacy’s inability to pay her attorney’s fees. We cannot find that the chancellor was manifestly wrong in his determination. This issue is also merit-less.
¶ 22. THE JUDGMENT OF THE JONES COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ROBERTS, CARLTON, MAXWELL AND RUSSELL, JJ., CONCUR. FAIR, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION, JOINED BY GRIFFIS, P.J., ROBERTS, MAXWELL AND RUSSELL, JJ.

. Albright v. Albright, 437 So.2d 1003 (Miss.1983).