# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-CA-01613-COA

**LARRY E. HAMMONDS**                                                          **APPELLANT**

**v.**

**DEIDRE HAMMONDS**                                                          **APPELLEE**

DATE OF JUDGMENT:               01/10/2013
TRIAL JUDGE:                    HON. G. CHARLES BORDIS IV
COURT FROM WHICH APPEALED:      JACKSON COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:         CALVIN D. TAYLOR
ATTORNEY FOR APPELLEE:          GARY L. ROBERTS
NATURE OF THE CASE:             CIVIL - DOMESTIC RELATIONS
TRIAL COURT DISPOSITION:        CUSTODY OF MINOR CHILD AWARDED
                                TO APPELLEE
DISPOSITION:                    AFFIRMED - 09/15/2015
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE GRIFFIS, P.J., BARNES AND JAMES, JJ.

### BARNES, J., FOR THE COURT:

¶1.     Deidre and Larry Hammonds were married in 2004. They had one child born of the marriage, Angelina, who was born on December 9, 2004. Both Larry and Deidre have two older children from prior relationships.

¶2.     The couple separated on February 23, 2010; Deidre filed a complaint for divorce on the ground of habitual cruel and inhuman treatment, or in the alternative, irreconcilable differences, a short time thereafter. In the complaint, she sought legal and physical custody of the couple's minor child, as well as possession of the marital home, child support, and an equitable division of the marital assets. Larry filed a counterclaim, also requesting a divorce

on the ground of habitual cruel and inhuman treatment, sole legal and physical custody of Angelina, and child support. He further requested a temporary and permanent restraining order be entered against Deidre.

¶3. After a hearing before a family master, a temporary order was entered on April 15, 2010, granting the parties joint legal custody of their minor child. Deidre was awarded temporary physical custody of Angelina, child support of $749 per month, the exclusive right to the marital home, and $1,000 in monthly alimony. Larry was awarded visitation rights. Larry filed an objection to the order, claiming that Deidre should not have been awarded physical custody of the child and that he was unable to financially meet the obligations of the order.

¶4. On May 11, 2010, Larry filed a complaint for emergency custody and modification of the temporary order. He argued that it was in the minor child's best interest that physical custody be awarded to him, as Deidre had been arrested for domestic violence on May 8. Deidre and her fifteen-year-old daughter, Courtney Hagan, had an argument that resulted in a physical altercation at the home. Angelina was not present during the altercation, and the charges were later dropped. As a result, Courtney entered counseling and went to live with Deidre's aunt in North Carolina.[1] In response, Deidre filed a petition, alleging that Larry was withholding Angelina from Deidre against her custodial rights, and that he had

_____

[1] Deidre's aunt, Betty Taylor, was a program coordinator at a behavioral/mental health facility in North Carolina.

2

repeatedly refused to return the child to her. She requested that Angelina be returned to her custody after the upcoming hearing on the matter.

¶5. After the May 13, 2010 hearing, the chancery court granted Deidre's petition and returned the child to Deidre's custody, finding there was "no showing of any immediate danger or irreparable harm or injury to [the] minor child." Larry's complaint for emergency custody and modification was denied; however, the order clarified that Angelina was to have "no contact with [Deidre's] other daughter, Courtney Hagan, unless same is directly supervised by [Deidre]" and that Deidre must obtain permission from the court before Courtney could return to the home. Deidre filed a motion to modify the order on August 10, 2010, requesting that the chancery court allow Courtney to return home "without formal legal restriction," but the court denied the motion.

¶6. On January 13, 2011, Larry filed a complaint seeking to modify the temporary order due to a substantial and material change in circumstances. He noted that he "had to resign" from his job and "[could not] afford to continue to pay the amounts" ordered by the court. He also asserted that a change in Angelina's school schedule had negatively affected the time he was able to spend with her.

¶7. On April 26, 2011, the couple consented to divorce on the basis of irreconcilable differences and submitted the remaining issues (child custody, ownership of the marital home, child support, visitation, resolution of the "Courtney issue," and division of marital assets) to the chancery court. On July 7, 2011, Deidre filed a motion to modify the temporary

3

order, noting that she had accepted a new job in North Carolina, which would require her to relocate. She requested that Larry's visitation rights be modified to accommodate this material change in circumstances and that either the marital home be sold or, in the event Larry wished to occupy the home, she be absolved of any debt owed on the home.[2] Deidre also filed a citation for contempt, alleging that Larry was $1,700 in arrears for child support and $3,000 in arrears for alimony, and that he had failed to maintain health-insurance coverage for Angelina per the order's requirements.

¶8.    After several hearings on the matters at issue, the chancery court determined, in a January 10, 2013 order, that both parties would have joint legal custody of the minor child. Deidre was awarded sole physical custody, with Larry having visitation rights as outlined by the court. Larry was ordered to pay $490 per month in child support, and both parties were ordered to maintain health insurance for the minor child. Deidre was awarded a judgment of $6,768.59 for past-due child support. Larry was awarded use and possession of the marital home, with the provision that he obtain refinancing and satisfy any outstanding indebtedness within two years. If unable to do so, the marital home was to be sold, and the proceeds from the sale divided equitably between the parties. The chancellor also concluded that since Courtney had "been able to transform her life and overcome her emotional issues," all restrictions concerning her contact with Angelina would be set aside.

---

[2] Larry did resume occupation of the marital home. According to exhibits, the remaining debt owed on the home was $227,487.72.

4

¶9.    Both parties filed a Mississippi Rule of Civil Procedure 59 motion to alter the judgment.  Addressing the issues raised in those motions, the chancellor denied Larry's request to reconsider the issue of custody, but he amended the visitation schedule per both parties' requests and revised the judgment awarded to Deidre to include interest.

¶10.   Larry has filed a notice of appeal, arguing that he should have been granted physical custody of the child.  Finding no abuse of discretion in the chancellor's findings, we affirm the judgment.

## DISCUSSION

¶11.   The sole issue on appeal is whether the chancery court abused its discretion in awarding primary physical custody of the minor child to Deidre.  The polestar consideration when awarding child custody is the best interest of the child.  *Albright v. Albright,* 437 So. 2d 1003, 1005 (Miss. 1983).  The factors to be considered in determining the best interest of the child are the following:

> Age[,] . . . health, and sex of the child; a determination of the parent that has had the continuity of care prior to the separation; which has the best parenting skills and which has the willingness and capacity to provide primary child care; the employment of the parent and responsibilities of that employment; physical and mental health and age of the parents; emotional ties of parent and child; moral fitness of parents; the home, school and community record of the child; the preference of the child at the age sufficient to express a preference by law; stability of home environment and employment of each parent, and other factors relevant to the parent-child relationship.

*Id*.  After reviewing the *Albright* factors, the chancellor determined that both parents would have joint legal custody, with Deidre to be awarded primary physical custody.  Larry was

5

awarded rights of visitation.

### A. Age, Health, and Sex of Child

¶12. At the time of the order, Angelina was an eight-year-old child in good health. The chancery court held that this factor "slightly" favored Deidre, as the evidence showed she was the one "responsible for making doctor's appointments for the child and taking the child to the doctor." Larry claims this factor favored neither parent, since both parents "have been actively involved" in Angelina's development. Although there is some evidence to support Larry's claim, we cannot say that the chancellor's determination is manifestly in error.

### B. Continuity of Care

¶13. Again, the chancery court found this favor slightly favored Deidre, noting that although Angelina enjoys being with her father, she considered Deidre's residence to be her "home." Larry contends that prior to the separation, because of his flexible work schedule, he provided the "bulk of said responsibilities" in the child's care. However, he does not make any specific argument as to why the court's findings were erroneous, except to assert there was evidence presented that Deidre "scream[ed] at the kids all the time[.]"

¶14. The chancellor acknowledged that, prior to the separation, both parents had shared in the responsibilities of raising the child, and the testimony reflects that the couple, for the most part, had shared the duties of childcare (e.g., she took the child to daycare; he picked her up). Deidre testified that she took the child to extracurricular activities and would get her ready for school. Larry's twenty-year-old son, Justin, corroborated that Deidre was

6

responsible for getting the children up and ready for school. Larry would come to the school and have lunch with Angelina. He also took care of the child after school, occasionally taking her to dance class.

¶15. In his determination, the chancellor apparently took into account the time the child had spent in Deidre's primary physical custody during the temporary order. We find no error in the chancery court's findings that this factor slightly favored Deidre. As the Mississippi Supreme Court noted in *Copeland v. Copeland*, 904 So. 2d 1066, 1076 (¶39) (Miss. 2004), the "time between separation and trial should be considered in determining continuity for children." (Citing *Jerome v. Stroud,* 689 So. 2d 755, 757 (Miss. 1997)).

### C. Parenting Skills

¶16. The chancellor stated that both parents have the "requisite skills necessary to serve as primary care givers of the child." He noted that both parents had assisted their children with homework and had shared in the household responsibilities. Larry argues that this factor was clearly in his favor, as Deidre had a history of violent behavior, such as yelling at the older children. Larry's eighteen-year-old daughter, Breanna, claimed that Deidre slapped her once. Larry mentioned the physical altercation between Deidre and Courtney. But Justin testified regarding Deidre's disciplinary methods: "She never really touched me. Like, she never whipped me or anything." He merely stated that Deidre would yell at the kids if they did not do their homework or chores. There was testimony by witnesses that Deidre was loud and would yell at the children, but Larry admitted that he had occasionally cursed at the children

7

when upset.

¶17. As the chancery court observed, both parties exhibited moments of anger, stemming from the stress of their relationship problems. The chancellor noted that the stress over Courtney's behavior "contributed to the dysfunction." Furthermore, the chancellor found that while Larry "was more involved in the child's education," Deidre had provided more financial support for the child's necessities. Thus, the court concluded that this factor did not favor either party. We find no error in the court's findings.

### D. Willingness to Provide Primary Childcare

¶18. As both parents expressed willingness to provide primary care for the child, this factor was found to be neutral, favoring neither party. Larry does not directly address this factor except to assimilate his argument regarding parenting skills, claiming that Deidre's behavior showed an "unwillingness to handle the children with the level-headedness needed by a parent."

¶19. The evidence reflects that Deidre was willing to provide primary care for Angelina; in fact, she had done so for years prior to the chancery court's final judgment. Consequently, we agree with the chancery court that this factor favors neither party.

### E. Employment of Parents and Responsibilities

¶20. The court found this factor favored neither party, and Larry does not dispute this finding.

### F. Physical and Mental Health, Age, and Moral Fitness of Parents

¶21.  Larry does not dispute the court's finding that this factor slightly favored Larry.[3]  The chancellor noted that both parties attend church regularly.  Despite allegations of adultery, no evidence was provided to support that claim.  The chancellor observed that Larry had high blood pressure and diabetes and that Deidre had suffered from emotional problems and "ha[d] been prescribed anti-depressants in the past."  But he concluded:  "Both parties are in good physical condition and their medical conditions do not impact their ability to earn income."

### G.   Emotional Ties of Parent and Child and Stability of Home Environment

¶22.  Larry agrees with the chancellor that this factor is neutral.  Both parents exhibit a strong emotional bond with Angelina.

### H.   Home, School, and Community Record of Child and Stability of Home and Employment

¶23.  At the time of the hearing, Deidre and Angelina lived with Deidre's mother in North Carolina.  The chancery court noted that Angelina currently had her own room at her grandmother's home, and that the parents' current living arrangements "are far better than the arrangement which existed when the parties lived together."  The chancery court also remarked that Angelina was doing well in school, and her teacher stated that she was "a sweet girl and a good student."  Prior the recent move to North Carolina, Angelina had

---

[3] Larry erroneously states the chancellor determined that this factor was neutral.  But the chancery court, in fact, found this factor to favor Larry.

participated in soccer and dance. The chancellor concluded: "Given the financial difficulties experienced by Larry, his change in employment, and his failure to pay child support, the [c]ourt finds that this factor favors Deidre since the home in which she currently resides is more stable than that of Larry."

¶24. Larry argues that the chancellor focused too much on Larry's delinquency in making mortgage payments, which he claims was due to Deidre's refusal to pay her share. However, Larry never explains why this factor should favor him, except to say that Angelina would also have her own room if she lived with him. He did not deny that Angelina was doing well in school in North Carolina. We find no error in the chancellor's ruling regarding this factor.

### I. Preference of Child

¶25. As Angelina was only eight years old at the time of trial, she was not of sufficient age to express a preference. Therefore, this factor is neutral.

### J. Other Factors

¶26. After the physical altercation between Deidre and Courtney, the chancellor had ordered that Courtney must be supervised by Deidre when interacting with Angelina. However, this restriction was rescinded in the court's final judgment. Larry argues the chancellor "erroneously overlooked" this issue of family violence in awarding primary physical custody to Deidre. He cites Mississippi Code Annotated section 93-5-24(9)(a)(i) (Rev. 2013), which states there is a "rebuttable presumption that it is detrimental to the child and not in the best interest of the child to be placed in sole custody, joint legal custody, or

joint physical custody of a parent who has a history of perpetrating family violence." This presumption "may be only be rebutted by a preponderance of the evidence," and:

> In determining whether the presumption set forth in subsection (9) has been overcome, the court shall consider all of the following factors:
>
> 1. Whether the perpetrator of family violence has demonstrated that giving sole or joint physical or legal custody of a child to the perpetrator is in the best interest of the child because of the other parent's absence, mental illness, substance abuse or such other circumstances which affect the best interest of the child or children;
>
> 2. Whether the perpetrator has successfully completed a batterer's treatment program;
>
> 3. Whether the perpetrator has successfully completed a program of alcohol or drug abuse counseling if the court determines that counseling is appropriate;
>
> 4. Whether the perpetrator has successfully completed a parenting class if the court determines the class to be appropriate;
>
> 5. If the perpetrator is on probation or parole, whether he or she is restrained by a protective order granted after a hearing, and whether he or she has complied with its terms and conditions; and
>
> 6. Whether the perpetrator of domestic violence has committed any further acts of domestic violence.

Miss. Code Ann. § 93-5-24(9)(a)(ii) & (iii).

¶27. However, in the order denying Larry's motion to alter the judgment, the chancellor explicitly addressed Larry's claim and discussed the statute, stating:

> The presumption [from the statute] comes into existence by showing either a pattern of family violence against a member of the household or a single incident of family violence that results in serious bodily injury. . . . [T]he Plaintiff's own child, Courtney, was a behavioral problem in the household.

11

> On one occasion[,] the Plaintiff and her child, Courtney, engaged in a dispute which resulted in physical aggression. Criminal charges were filed and later dismissed. There were also allegations regarding an altercation between the Defendant's child and the Plaintiff.[4] No criminal charges were filed. The record is filled with testimony regarding each party yelling, cursing, hollering and screaming in the household and at the children.
>
> . . . .
>
> Despite the chaos, the Court finds that neither party has a history of perpetuating family violence on any household member and that neither has been responsible for an incident of family violence that has resulted in serious bodily injury.

In a similar case, *C.W.L. v. R.A.*, 919 So. 2d 267, 271-72 (¶¶12-17) (Miss. Ct. App. 2005), we upheld a chancery court's finding that this statute was inapplicable because there was no "pattern of family violence," and the testimony of the parties at most "documented general yelling and screaming which, on a few occasions, resulted in slapping and perhaps one incident of choking[,] . . . and there w[ere] no serious or even moderate injuries resulting from the same." Reviewing the evidence in the present case, we find no abuse of discretion in the chancellor's findings.

## CONCLUSION

¶28. A chancellor's findings will not be disturbed on appeal "unless the chancellor was manifestly wrong or clearly erroneous, or applied an erroneous legal standard.*" Speights v. Speights*, 126 So. 3d 76, 81 (¶14) (Miss. Ct. App. 2013) (quoting *Jordan v. Jordan,* 105 So.

---

[4] Deidre acknowledged the physical altercation with Courtney, but she also testified that Larry had hit her son, Cooper, "upside the head."

12

3d 1130, 1133 (¶10) (Miss. Ct. App. 2012)).  In the present case, the chancellor thoughtfully applied each *Albright* factor, and his judgment is supported by substantial evidence and based on the best interest of the child.  Accordingly, we find no error in the chancery court's decision to award physical custody to Deidre.

¶29.   **THE JUDGMENT OF THE CHANCERY COURT OF JACKSON COUNTY IS AFFIRMED.  ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

   **LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, CARLTON, MAXWELL, FAIR, JAMES AND WILSON, JJ., CONCUR.**