Mr. Chief Justice Sharkey
delivered the opinion of the court.
This bill was filed by the appellee, McCardle, to enjoin a judgment at law. The' facts disclosed by the pleadings, seem to be about to the following effect: On the 25£h of September, 1838, Tyler had made his note with- Brooks and Shannon as securities for the sum of $8,800, payable at the Commercial Bank of Natchez, fifteen months after the 2d day of October, 1838. On the 1st day of January, 1839, William H. McCardle, S. S. Prentiss and M. Shannon, made their note to Tyler for $10,000, payable twelve months after date, on which Tyler brought suit in February, 1840. During that year, and whilst the suit was still pending, Tyler proposed to McCardle, that if he would pay the note of Tyler, held by the Commercial Bank, and entirely release said Tyler therefrom, that he, Tyler, would dismiss the suit at law, and release the said McCardle and his sureties, Prentiss and Shannon, from their liability to him on the note on which the suit was pending, which proposition was accepted and agreed to. The note of Tyler was afterwards taken up by Prentiss, but Tyler in the mean time having recovered judgment, refused to enter full satisfaction, but entered a credit on his execution for the amount of the note so taken up by Prentiss, and was pressing his execution to collect the balance.
*243 The contract is admitted by the answer, and also fully established by the proof; but the respondent insists that he ought not to be held bound to perform it, for three reasons; first, that the complainants did not comply within the time intended for performance, or within a reasonable time; second, that respondent withdrew his proposition before complainants had complied with the agreement; and third, that it was not a valid and binding contract.
On- the first point it is contended, that the understanding was that Tyler’s note due the Commercial Bank should be lifted immediately; that the agreement was of such a nature, that time was of the essence of the contract. The agreement was made in 1840, but no time was fixed on for its performance. The note of Tyler was taken up by Prentiss in October, 1841, though it seems probable that he had been negotiating for its liquidation at an earlier period, probably in August, 1841, for on the 27th of that month, Prentiss received a‘letter from the cashier bf the bank, in reply to one dated the 19th, containing a statement of the amount of Tyler’s note and interest. The testimony of witnesses would seem to place the negotiations at even an earlier date, but no definite contract seems to have been made before September, 1841, when Prentiss gave a mortgage to the bank. The judgment of Tyler had been recovered at May term, 1841, of the Warren circuit court, and it was resisted on the ground of the compromise, or at least it was stated at the time, that the matter had been compromised. It seems that Tyler was induced to enter into this arrangement, because he doubted the solvency of the parties, and it is probable that he was induced to abandon it, because he had been informed that the parties were good. But his motives cannot excuse the opposite parties. We have to determine whether they have so complied with their contract as to entitle them to relief. In order that time may be regarded as of the essence of the contract, the .contracting parties must fix upon a time for performance, and thereby indicate that the time of performance was regarded by them as important; or its importance must result from the nature and circumstances of the contract. *244 2 Story’s Equity Jurisprudence, 100, sec. 776 (and note 1); Jeremy’s Equity, 461. Equity will in general grant relief against a party who gets that for which he contracted, but in doing this, it acts upon the supposition that the parties looked to the substance of the contract, rather than the time of performance. It cannot make different contracts for parties, nor enlarge them beyond proper bounds. Time, in this instance, was only a matter of substance, as it resulted from the nature and circumstances of the contract. The nature of the contract necessarily required that it should be performed whilst the suit was pending. Up to that time, Tyler could dismiss and comply with his contract. . After judgment he could only enter satisfaction, and if the complainants are entitled to relief, it must be given by directing Tyler to do that which he never agreed to do. It seems that the dismissal of the suit was the thing contemplated, and as the agreement was to dismiss on certain terms, the parties seeking relief must be supposed to have contemplated performance before judgment.
This is in the nature of a bill for a specific performance. The agreement was made in 1840, in reference to a suit then pending. Judgment was recovered in May, 1841. In October of that year the complainants took up the note of Tyler. This delay is too great to entitle them to the favorable consideration of a court of equity ; and especially is it so when it is considered that it was a contract to gain a less sum for a greater. They were evidently the parties to be most benefited by the contract, and are therefore least entitled to be indulged. A party cannot obtain a decree for specific performance, without he shows a compliance, or readiness to comply with his part of the contract, and this principle must have its weight in this controversy.
But it seems doubtful whether the note of Tyler was lifted under the original contract, or under a promise made by his counsel at the trial, in accordance with his directions, that the complainants should be credited by the amount. This has been done; and this view of the subject is fortified by the circumstances. This promise, or engagement, was made with Prentiss, who was a surety, and who lifted Tyler’s note. Tyler contracted with McCardle, the principal debtor.
*245 If Tyler had continued to admit the validity and existence of the agreement up to the time of filing the bill, the complainants might still be entitled to relief; but it appears that long before the rendition of judgment, he had, through his attorney, notified McCardle that he should consider the contract as abandoned. And at the trial he refused to admit its existence. We have said that by a fair construction of the contract, the complainants should have performed before judgment. Having failed to do so, at the trial Tyler had a right to elect to put an end to the contract for non-performance, to say nothing of his previous determination, made through his attorney. By pressing the trial, notwithstanding the opposite parties insisting on the agreement, we must understand that the contract was abandoned.
The decree of the chancellor is reversed, and the bill dismissed.
At a'subsequent day of the term the counsel for Tyler moved the court for damages on the amount enjoined at law.
W. and W. G. Thompson, in behalf of the motion, cited and relied on the section of the statute, (How. & Hutch. 514, § 41,) which provides that “ where any injunctions shall be obtained to stay the proceedings on any judgment at law, rendered in any of the courts in this state for money, and such injunction shall be dissolved, wholly or in part, damages as aforesaid, from the time the injunction was awarded until the dissolution, shall be paid to the party on whose behalf the injunction was obtained, on such sum as appears to be due, including the costs.”
The counsel for appellees contended, that the 41st section was to be construed in connection with the 40th section, which was in these words: “No injunction shall be granted to stay an execution of a judgment at law, unless the party applying for'such injunction, or to be benefited thereby, shall first sign and seal a release of errors in such judgment at law, and file the same in the office of the clerk of the court in which such judgment shall have been obtained; and whenever an injunction shall be dissolved, damages, after the rate of six per centum, *246 shall be added to the amount of the judgment; provided, the court be of opinion that the injunction was obtained for delay/’
It was insisted that unless the court was of opinion the injunction was obtained for delay, damages ought to be allowed.
The court overruled the motion, and refused to award. damages.