## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CA-01423-COA

ANTHONY LITTLE                                                          APPELLANT

v.

DONALD RICHEY AND NANCY L. RICHEY                                      APPELLEES

DATE OF JUDGMENT:                 09/01/2016
TRIAL JUDGE:                      HON. JACQUELINE ESTES MASK
COURT FROM WHICH APPEALED:        MONROE COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:           SARAH CLINE STEVENS
ATTORNEYS FOR APPELLEES:          L. BRADLEY DILLARD
                                  JOHN M. CREEKMORE
NATURE OF THE CASE:               CIVIL - REAL PROPERTY
DISPOSITION:                      AFFIRMED - 11/07/2017
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE GRIFFIS, P.J., CARLTON AND GREENLEE, JJ.

### CARLTON, J., FOR THE COURT:

¶1.     After a trial held on June 30, 2016, the Monroe County Chancery Court granted

Donald and Nancy Richey's complaint seeking to quiet and confirm title and asserting a

claim of adverse possession against Anthony Little.

¶2.     Anthony now appeals, asserting the following assignments of error: (1) the trial court

abused its discretion in denying his motion for additional time to conduct discovery; (2) the

Richeys failed to prove each element of their adverse-possession claim by clear and

convincing evidence; and (3) the trial court abused its discretion in admitting the deposition

of witness Sherry Bortz into evidence.

¶3.     Finding no error, we affirm the trial court's judgment.

FACTS

¶4.     On January 26, 2011, Donald and Nancy filed a complaint in the Monroe County Chancery Court asserting a claim of adverse possession and seeking to quiet and confirm title to real property.   The Richeys initially filed the complaint against Tim Little and any unknown persons having any legal or equitable interest in the real property located in Monroe County, Mississippi.   The chancellor later granted the Richeys' motion to join Tim's son, Anthony Little, as a defendant.   The agreed order granting the Richeys' motion to join Anthony as a defendant was executed by Bradley Dillard, counsel for the Richeys, and Timothy Ervin, counsel for Tim.   The record shows that Timothy Ervin also signed the order as counsel for Anthony.

¶5.     The chancellor held a trial on the matter on April 21, 2016.  The chancellor dismissed Tim as a defendant due to the fact that he no longer owned the property in question.  At that time, Anthony informed the chancellor that Ervin did not, and never had, represented him in the matter at issue.  Anthony requested a continuance in order to retain additional counsel.

¶6.     The chancellor granted the request and continued the case until June 30, 2016, so that Anthony could retain additional counsel.  After moving the trial date to June 30, 2016, the chancellor cautioned Anthony:

> [U]nless there is an emergency of some kind, there will not be a continuance,
> so you need to  advise your attorney, if you hire one, of the court date so they
> will be available because we are going to get this case finalized within the next
> hopefully few weeks as soon as I check my schedule.

¶7.     On June 16, 2016, two weeks before trial, Sarah Cline Stevens entered an appearance in the matter on behalf of Anthony and filed a motion for additional time to conduct

discovery. The chancellor denied the motion.

¶8. After the trial, the chancellor entered her opinion and judgment on September 1, 2016, finding in favor of the Richeys as to their claim of adverse possession. Anthony now appeals.

## STANDARD OF REVIEW

¶9. "This Court employs a limited standard of review when reviewing the decisions of a chancellor." *Powell v. Meyer*, 203 So. 3d 648, 652 (¶16) (Miss. Ct. App. 2016). We will only reverse a chancellor's determinations if "they were manifestly wrong, clearly erroneous, or . . . the chancellor applied an incorrect legal standard." *Id*.

## DISCUSSION

### I. Denial of Discovery

¶10. Anthony argues that the Richeys failed to properly and timely join him as a defendant in the present case. Anthony asserts that, as a result, the chancellor abused her discretion by allowing the case to proceed to trial without adequate time for him to conduct discovery. Anthony also alleges that the chancellor and counsel for the Richeys "coerced" Anthony into waiving his rights to discovery and time to prepare for a trial by soliciting a verbal waiver stipulating his submission to the jurisdiction of the court and waiving all rights to a continuance. Anthony argues that the inability to conduct discovery left him unable to defend himself against the Richeys' claim of adverse possession.

¶11. The Mississippi Supreme Court has held that "[t]he trial court has considerable discretion in matters relating to discovery and its order will not be disturbed unless there has

3

been an abuse of that discretion." *Strickland v. Estate of Broome*, 179 So. 3d 1088, 1094 (¶19) (Miss. 2015); *see also Blossom v. Blossom*, 66 So. 3d 124, 126 (¶9) (Miss. 2011).

¶12. The record reflects that during Tim and Anthony's depositions, the Richeys discovered that Anthony, and not Tim, now constituted the record owner of the property at issue. As a result, the Richeys filed a motion to join Anthony in the action "so that a full adjudication in this cause would be binding on him as well as the other parties." On January 18, 2013, the chancellor granted the Richeys' motion to join Anthony as a defendant. The order granting the motion reflects that Anthony had no objection to the motion. The order also states that Anthony waived service of a summons and complaint on him in the matter. The order provides, in full:

> Before the court is a Motion for Joinder of Party filed by [the Richeys], and after having duly considered said Motion and having been advised that attorney Tim Ervin has no objection, nor does proposed Defendant Anthony Little have any objection to same, the court hereby finds that said Motion for Joinder of Party is hereby well taken and should be granted. It is, therefore,
>
> ORDERED AND ADJUDGED that Anthony Little is hereby joined as a party Defendant in this cause, waiving service of a Summons and Complaint on him in this matter.
>
> IT IS FURTHER ORDERED AND ADJUDGED that Defendant Anthony Little may simply adopt the answer of Co-Defendant Tim Little, or may file his own answer as he deems appropriate.
>
> SO ORDERED this the 18th day of January, 2013.

¶13. The record shows that the order was executed by counsel for the Richeys, and by Ervin as counsel for Tim and as "attorney for Defendant Anthony Little." Anthony acknowledged that Ervin signed the order as counsel for him and his father, Tim, but

4

Anthony now maintains that Ervin never actually represented him. Anthony also claims that he never received notice of the January 18, 2013 order. Anthony's argument fails to address the notice given to him in court on April 21, 2016.

¶14.    The record reflects that at the initial April 21, 2016 trial date, counsel for the Richeys did not dispute that Ervin never represented Anthony. However, counsel for the Richeys argued:

> [Anthony] was joined as a party in January of 2013. This case was filed in January of 2011, so it's been pending for over five years; over three years since [Anthony] has been a party. Apparently, at no point during the course of this case has [Anthony] made any effort to get his own independent counsel.

¶15.    Counsel for the Richeys also asserted that Anthony provided a deposition in the matter and argued that "[t]his case has been pending, he's here today, so there was no reason for us to serve him with anything else once that order was entered." Ervin also testified that he "never represented [Anthony] in the litigation at all. . . . He's not retained me, he's not paid me at all in this litigation."

¶16.    At the April 21, 2016 trial, the chancellor questioned both Ervin and counsel for the Richeys about whether Ervin's signature executing the January 18, 2013 order therefore bound Anthony to the order. The chancellor ultimately opined "that there is no alternative but to continue the case." The chancellor continued the case to June 30, 2016, and informed Anthony that he is "now aware of the fact that [he is] a party in the suit," and instructed him to retain an attorney. The chancellor also advised Anthony that she was going to set the case for hearing, and stated that "[u]nless there is an emergency of some kind, there will not be a continuance, so you need to advise your attorney, if you hire one, of the court date so that

they will be available[.]"

¶17.    Ervin also informed the chancellor that once Anthony obtained counsel, Ervin intended to furnish the attorney with "everything [Ervin possessed] up until this date . . . because . . . [Anthony has] given a deposition in the past."  Significant to the resolution of this instant case, Anthony also executed a waiver of service of process on April 26, 2016, which stated that Anthony had "voluntarily enter[ed] his appearance in this matter and acknowledge[d] his status as a defendant pursuant to a January 18, 2013 order joining him as a party, waiving service of process in this cause."  Accordingly, we find that the record reveals that Anthony indeed entered a personal appearance, waived service of process, and acknowledged his status as a defendant.  Notably, Anthony raised no objection to the January 18, 2013 order joining him as a defendant.

¶18.    On June 16, 2016, two weeks before trial, Stevens entered an appearance in the matter as counsel for Anthony and filed a motion for additional time to conduct discovery.  After considering the motion and after a telephone conference, the chancellor entered an order on June 23, 2016, denying the motion.  The record shows that Stevens again renewed her motion for additional time at the start of the June 30, 2016 hearing, which the chancellor again denied, explaining that she had "denied that [motion] during our phone conference and that remains the decision of the court, and [she] gave the reasons at that time. . . . Those reasons continue to exist."[1]

¶19.    In *Robinson v. Brown*, 58 So. 3d 38, 42 (¶10) (Miss. Ct. App. 2011), this Court held

---

[1] The transcript from the phone conference does not appear in the record before us.

6

that "the decision to grant or deny a continuance is within the sound discretion of the trial court and will not be reversed absent an abuse of discretion that resulted in a manifest injustice." On appeal, "[t]his Court will not reverse the denial of a continuance absent a finding of prejudice." *Id.* Furthermore, as previously stated, the supreme court has held that "[t]he trial court has considerable discretion in matters relating to discovery and its order will not be disturbed unless there has been an abuse of that discretion." *Strickland*, 179 So. 3d at 1094 (¶19).

¶20. The record before us reveals that counsel for the Richeys deposed Anthony and his father, Tim, on August 30, 2012, a little less than four years before the initial date set for trial. Additionally, the record reflects that on April 21, 2016, the initial date set for the trial, the chancellor granted a continuance at Anthony's request after he argued that Ervin had never represented him. As stated, at the April 21, 2016 trial, Anthony entered a personal appearance and agreed to the terms of the continuance on the record, acknowledging that he understood that any attorney he hired would represent him subject to the June 30, 2016 trial setting, and that the chancellor would not grant a continuance based on any conflict that Anthony or his attorney might have with that date. Moreover, as discussed, on April 21, 2016, Anthony executed a written waiver of service of process and entered a voluntary appearance and acknowledged the trial court's prior order joining him as a defendant without objection. As a result, we cannot say that the chancellor's decision to deny Anthony's second request for a continuance caused Anthony to suffer manifest injustice in the matter. We accordingly find no abuse of discretion by the chancellor. *See Robinson*, 58 So. 3d at 42

7

(¶10).

## II.     Clear and Convincing Evidence

¶21.     Anthony next asserts that the Richeys failed to prove each element of their adverse-possession claim by clear and convincing evidence and, as a result, the chancellor erred in granting the Richeys' motion to quiet and confirm title.

¶22.     This Court has held that "[t]he chancellor's findings of fact will be accepted as long as the record reasonably supports those findings." *Rester v. Greenleaf Res. Inc*., 198 So. 3d 472, 474 (¶5) (Miss. Ct. App. 2016) (internal quotation marks omitted). We will only reverse where the chancellor "abused her discretion, was manifestly wrong or clearly erroneous, or applied the wrong legal standard." *Id*. (citing *Biddix v. McConnell*, 911 So. 2d 468, 474-75 (¶17) (Miss. 2005)). We further recognize that "[a]s the trier of fact, the chancellor evaluates the sufficiency of the evidence based on the credibility of the witnesses and the weight of their testimony." *Id*. "Questions of law are reviewed de novo." *Id.*

¶23.     Mississippi Code Annotated section 15-1-13(1) (Rev. 2012) sets forth the following elements of adverse possession:

> Ten (10) years' actual adverse possession by any person claiming to be the owner for that time of any land, uninterruptedly continued for ten (10) years by occupancy, descent, conveyance, or otherwise, in whatever way such occupancy may have commenced or continued, shall vest in every actual occupant or possessor of such land a full complete title . . . .

¶24.     In *Powell v. Meyer*, 203 So. 3d 648, 652 (¶18) (Miss. Ct. App. 2016), this Court explained the six-part test that is applied when determining whether adverse possession has occurred:   "for possession to be adverse it must be (1) under claim of ownership; (2) actual

or hostile; (3) open, notorious, and visible; (4) continuous and uninterrupted for a period of ten years; (5) exclusive; and (6) peaceful." The "adverse possessor" bears the burden of proving each element by clear and convincing evidence. *Ellison v. Meek*, 820 So. 2d 730, 734 (¶13) (Miss. Ct. App. 2002).

¶25. Anthony argues that the Richeys failed to show that they possessed the land to the exclusion of others. Anthony explains that "by not prohibiting the thinning of trees in 2004 and 2007, the Richeys did not exclude the true owners from continuing to improve and cultivate their tree farm[.]" Anthony also argues that the Richeys' peaceful use and possession of the land was disrupted by Tim Little in 2010, when he hired an attorney to send the Richeys a cease and desist letter after the Richeys cut timber from the property at issue.

¶26. The record reflects that at trial, Nancy Richey testified that she and her husband began constructing a fence on the property at issue, which was completed in 1994. Anthony asserts that the Richeys failed to provide clear and convincing evidence to prove that they built an encroaching fence on the property in 1994. The record shows that Anthony presented testimony from a registered forester who opined that the encroaching fence was built in 2004, rather than 1994. Anthony also asserts that his father, Tim, removed the encroaching fence in 2010 and erected another fence along the surveyed boundary line. As a result, Anthony claims that the Richeys use of the property was not continuous and uninterrupted for ten years.

¶27. In *Ellison*, 820 So. 2d at 734-35 (¶14), this Court explained that "mere possession is not sufficient to satisfy the requirements of open and notorious possession." Rather, the

9

"adverse possessor must fly the flag over the land and put the true owner upon notice that his land is held under an adverse claim of ownership. *Id*. at 735 (¶14).

¶28.    The *Ellison* court further held that "[i]f a fence encloses the property for a period of at least ten years, under a claim of adverse possession, title vests in the claimant and possessor, even though the fence was subsequently removed or fell into disrepair." *Id*. at (¶15). However, the Court cautioned that "[t]he existence of an old barbed wire fence, as sole evidence[,] does not constitute adverse possession." *Id*. Instead, "[t]he actual activity within the fenced area shows open and hostile possession." *Id*. The *Ellison* court also held that "the acts of cutting of timber and occasional pasturing of the land are insufficient to constitute open and hostile possession." *Id*.

¶29.    The record reflects that at trial, the chancellor heard testimony from the Richeys; Robert Tomey, county supervisor for Monroe County; Tim Little; Anthony Little; Bobby Edwards, Tim Little's brother-in-law; Bruce Pennington, who farmed the land adjacent to the property at issue; and Steven Gruchy, a registered forester. The chancellor also heard deposition testimony from Sherry Bortz. Additionally, prior to entering her judgment on the matter, the chancellor viewed the disputed property, where she "observed no evidence of cutting trees and observed the fence that was torn down, and all materials looked old." She opined that "[t]he evidence on the ground matched the credible proof of the Richeys." The chancellor ultimately held that "the Richeys have established their claim by adverse possession to the area included within the fence erected by them in 1993 and 1994, and title thereto is quiet and confirmed in them."

10

¶30. In her judgment, which we quote in length, the chancellor "assesse[d] the credible proof in light of the foregoing elements" and found the following:

**(1) Under claim of ownership**

In this instance, the court finds the placement of the fence by the Richeys was the result of their belief, though perhaps mistaken, that the property was included in the tract which they had purchased. It was also unrebutted that the Richeys paid taxes on the parcel in question. Accordingly, the credible proof is sufficient to meet this element. Nevertheless,

> The mere presence of a fence, without more, has never been sufficient to sustain a claim of adverse possession. As this Court has clearly stated:
>
> > When a fence or hedge row is relied upon to delineate the boundary of an adverse claim, the applicable rule is whether the enclosure[,] like other acts of possession, is sufficient to fly the flag over the land and put the true owners on notice that his land is held by an adverse claim of ownership.
>
> *Snowden & McSweeny Co. v. Hanley*, 195 Miss. 682, [687,] 16 So. 2d 24, 25 (1943)[.] In other words, the adverse possessor (in this case, Double J) must present some proof that its occupation of the record owner's property was hostile, and that the record owner—aware of the adverse possessor's hostile occupation—took no action to prevent adverse possession . . . .

. . . .

*Double J Farmlands, Inc. v. Paradise Baptist Church*, 999 So. 2d 826, 829 [(¶15)] (Miss. 2008).

**(2) Actual or hostile**

The requisite proof to satisfy this element has been summarized as follows:

> To prove actual possession, the adverse possessor must show that he exercised control over the disputed property, "evidenced

11

by things visible to the eye or perceptible to the senses." [*Wicker v. Harvey*, 937 So. 2d 983, 993-94 (¶34) (Miss. Ct. App. 2006)] (quoting *Blankinship v. Payton*, 605 So. 2d 817, 819-20 (Miss. 1992)). That possession is considered hostile when the adverse possessor intends to claim ownership of the land of another although the adverse possessor is under a mistaken belief that the land lies within the description contained in his own deed. *Id*. at 994 (¶34) (citing *Alexander v. Hyland*, 214 Miss. 348, 357, 58 So. 2d 826, 829 (1952)).

*Webb v. Drewrey*, 4 So. 3d 1078, 1083 (¶16) (Miss. Ct. App. 2009). Additionally, "an important question to ask is whether the person adversely claiming the property exercises the same character of control over the land as he would toward property actually his and which he would not have exercised over property which did not belong to him. *Jackson v. Peoples Bank*, 869 So. 2d 422, 424 (¶8) (Miss. Ct. App. 2004) . . . .

In this case, the credible proof was clear and convincing that the Richeys erected a fence then placed horses within the enclosure and maintained control of the fenced area throughout the time it was occupied by those animals. The credible proof also established that the smaller barn identified as "B2" was constructed by the Richeys along the property in dispute. In the court's view, this element has been satisfied.

## (3) Open, notorious, and visible

The character of proof needed to support this element was described by our appellate court:

> The mere possession of land is not sufficient to satisfy the requirement that the adverse possessor's use be open, notorious, and visible. *Wicker*, 937 So. 2d at 994 (¶35) (citing *Craft v. Thompson*, 405 So. 2d 128, 130 (Miss. 1981)). A claim of adverse possession cannot begin unless the landowner has actual or constructive knowledge that there is an adverse claim against his property. *Scrivener v. Johnson*, 861 So. 2d 1057, 1059 (¶6) (Miss. Ct. App. 2003) (citing *People's Realty & Dev. Corp. v. Sullivan*, 336 So. 2d 1304, 1305 (Miss. 1976)). "[A]n adverse possessor 'must unfurl his flag on the land, and keep it flying, so that the (actual) owner may see, and if he will, [know] that an enemy has invaded his domains, and planted the standard of conquest.'" . . . .

*Webb*, 4 So. 3d at 1083 [(¶19)].

In this case, the credible proof established in a clear and convincing manner that the Richeys erected a fence in 1993 and 1994, placed livestock therein, constructed a small barn along the property line, and maintained a level of usage of the disputed property that would have placed the record owner on notice of the occupation. The horses treaded paths along the fence area, and likely contributed to some of the clearing of the occupied area. The Richeys also cleared some of the small trees from the disputed area during their occupation thereof. Tim Little's allegation that there was no fence in 2006 was unsupported. The allegation that the fence was constructed in 2007 was not supported by credible proof or the court's viewing of the property. This element is satisfied.

**(4) Continuous and uninterrupted for a period of ten years**

Pursuant to section 15-1-13, the Richeys maintained adverse occupation of the disputed area beginning in 1994 and continued uninterrupted thereafter until 2010, after which their fencing was removed and this action ensued. The court finds this element has been satisfied.

**(5) Exclusive**

In the context of a claim for adverse possession:

> "Exclusive use" does not mean that no one else may use the property. *Moran v. Sims*, 873 So. 2d 1067, 1069 (¶10) (Miss. Ct. App. 2004). Exclusivity, within the meaning of the statute, means that the adverse possessor's use of the property was consistent with an exclusive claim to the right to use the property. *Id*. Exclusive use is at the most basic level the intent of actual and hostile possession.

*Apperson v. White*, 950 So. 2d 1113, 1119 [(¶15)] (Miss. Ct. App. 2007). The court finds the credible proof was clear and convincing that the Richeys exercised exclusive use of the area within the fenced enclosure. While it was alleged that the trees had been thinned, this was not inconsistent with the facts established by the Richeys concerning their removal of small trees and the occupancy of the property by their horses.

**(6) Peaceful**

The credible proof was clear and convincing that the Richeys occupation of the

13

area within the fence was undisputed from 1994 until the incident in 2011 that prompted this litigation.

¶31.    After our review of the record and the chancellor's thorough findings set forth in her judgment, we find substantial evidence in the record to support the chancellor's determination that the Richeys proved adverse possession by clear and convincing evidence. Therefore, we find the chancellor did not abuse her discretion.

### III.    Deposition Testimony

¶32.    Anthony asserts that the trial court abused its discretion in allowing the deposition of witness Sherry Bortz, the Richeys' daughter, to be read into evidence. Anthony maintains that he failed to receive notice of the deposition, nor was he present or represented by counsel. Anthony claims that had he been represented by counsel during the deposition, additional cross-examination may have been conducted, and testimony favorable to him could have been elicited.

¶33.    The record reflects that Bortz resides in Murfreesboro, Tennessee. The record also reflects that during Bortz's March 25, 2016 deposition, Ervin appeared at the deposition on behalf of Tim and Anthony.

¶34.    At trial, Anthony's counsel objected to the admission of Bortz's deposition testimony into evidence, stating

> it's in violation of Mississippi Rule[] of Civil Procedure 32, which states that a deposition is only admissible and may be used in advance of party who is present or represented at the taking of the deposition, or had reasonable notice thereof. When this deposition was taken . . . on March 22nd, [Anthony] had not yet properly been joined as a party. The notice of deposition was only sent to his father's attorney, Mr. Ervin, and [Anthony] was not present at the deposition.

14

The chancellor overruled the objection and allowed Bortz's deposition testimony to be read into evidence.

¶35. In her judgment, the chancellor referred to Bortz's deposition testimony, stating that Bortz's testimony "indicated she rode horses on the disputed property from 1996 to 2010 or 2011, at least twice a year." During that time, Bortz "never observed anyone else using the property. In her view, the Richeys claimed to be owners of the area, and made open and visible use of it, and the fence never moved until it was taken down."

¶36. We recognize that "[t]he admission of deposition testimony is within the sound discretion of the trial court." *Williams v. Homecomings Fin. Network Inc.*, 134 So. 3d 779, 781 (¶10) (Miss. Ct. App. 2013). Regarding the admission of evidence, "reversal is not warranted unless judicial discretion is abused." *McCullough v. McCullough*, 52 So. 3d 373, 377-78 (¶17) (Miss. Ct. App. 2009).

¶37. The record reflects that at the time of the deposition, Anthony had been joined as a party pursuant to the January 18, 2013 agreed order. Our review of the chancellor's judgment reveals that in making her decision to quiet and confirm title in favor of the Richeys, she relied upon testimony from all of the witnesses, as well as various items admitted into evidence, such as photographs, a survey of the property, Conservation Reserve Program records, as well as the chancellor's own observations made when visiting the disputed property. The record reflects that regarding the fence and the Richey's open and visible use of the property, Bortz's deposition testimony was consistent with that of other witnesses. Hence, Bortz's testimony was cumulative with the testimony of other witnesses. The chancellor only specifically mentioned Bortz's deposition testimony when summarizing

15

the testimony presented at trial by each of the witnesses. As a result, we find no abuse of discretion in the chancellor's admission of Bortz's deposition testimony into evidence. *Williams*, 134 So. 3d at 781 (¶10).

¶38. **AFFIRMED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., FAIR, GREENLEE AND WESTBROOKS, JJ., CONCUR. WILSON, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. BARNES AND TINDELL, JJ., NOT PARTICIPATING.**