## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2020-CA-00267-COA

**POLK PRODUCTIONS INC.**                                              **APPELLANT**

**v.**

**HAZEL DOWE, ANSH PROPERTY LLC,**                          **APPELLEES**
**STEVEN PRICE NIXON AND MILNER &**
**NIXON PLLC**

| | |
|---|---|
| DATE OF JUDGMENT: | 02/07/2020 |
| TRIAL JUDGE: | HON. JAMES CHRISTOPHER WALKER |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT, SECOND JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANT: | THOMAS McCARLEY BRYSON BEN J. PIAZZA JR. |
| ATTORNEYS FOR APPELLEES: | TIMOTHY LAVELLE RUTLAND PAUL E. ROGERS LAWRENCE MATTHEW QUINLIVAN |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED - 11/23/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE BARNES, C.J., GREENLEE AND LAWRENCE, JJ.**

**GREENLEE, J., FOR THE COURT:**

¶1.     This appeal arises from the Hinds County Chancery Court's denial of Polk Productions Inc.'s request for specific performance and monetary damages against Hazel Dowe, Ansh Property LLC, Steven Price Nixon (Steven), and Milner & Nixon PLLC (collectively Appellees) regarding Hazel Dowe's sale of 3.17 acres of property in Hinds County, Mississippi. Polk Productions Inc. (Polk) acquired a "first right of refusal" to purchase the subject property in May 2012. In November 2016, Dowe and Ansh Property

LLC (Ansh) entered into a contract to purchase the same property and then purchased the property. In August 2017, Polk filed suit for specific performance and monetary damages. After a trial, the chancellor denied both requests.

¶2. On appeal, Polk argues that the chancellor erred by not granting specific performance and by not accepting evidence of his anticipated business profits and losses. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶3. In May 2012, Hazel Dowe conveyed thirteen acres to Polk via a warranty deed, which contained a restricted covenant that limited Polk's ability to sell gasoline on the property. At the same time as the conveyance, Dowe executed a right of first refusal in favor of Polk regarding real property located at 1400 South Highway 18, Raymond, Mississippi. The right of first refusal provides, in relevant part, that Dowe grants Polk

> [t]he Right of First Refusal to purchase [Dowe's] entire interest in fee simple in and to the below described lands at the price and terms of any bona fide written offer made for it. Provided, however, that [Dowe] shall deliver to [Polk] at [Polk's] address as set forth herein such offer in writing and delivered by U.S. mail, certified, return receipt requested and upon the receipt thereof [Polk] shall have ten (10) days in which to exercise the Right of First Refusal granted herein, by notifying [Dowe] in writing, addressed to [Dowe] at [Dowe's] address as set forth herein. Said notification shall be by United States mail, certified, return receipt requested. The closing of said purchase shall occur within a reasonable period after such notification.

¶4. About five years later, on January 31, 2017, Dowe conveyed the property to Ansh via a warranty deed for the purchase price of $400,000. The deed was prepared by Milner & Nixon PLLC (Nixon). Before purchasing the property, Dowe was required to provide an

abstract of title and/or a certificate of title and to cure any title defects discovered. Instead of receiving a title abstract or a title certificate, Ansh was given a copy of a commitment for title insurance, which failed to identify a right of first refusal or any other defect against the property.

¶5.     On August 16, 2017, Polk filed a complaint in the Chancery Court for the Second Judicial District of Hinds County, Mississippi, against Dowe and Ansh. In its complaint, Polk sought specific performance of the right of first refusal and damages for irreparable harm caused by the breach of contract. On October 5, 2017, Ansh filed its answer and defenses, third-party claim, and cross-claim, asserting that it lacked actual or constructive knowledge of the right of first refusal. Ansh contended that it was a good faith and bona fide purchaser.[1]

¶6.     In November 2017, Dowe filed her answer to the complaint, third-party complaint, cross-claims, her defenses, and cross-claim. Nixon filed its answers, affirmative defenses, and its counterclaim on December 7, 2017. On December 20, 2017, Ansh filed its motion to dismiss for failure to state a claim upon which relief may be granted. Specifically, Ansh asserted that because Polk's complaint sought specific performance and damages based on Dowe's breach of contract, there was no basis for relief against Ansh because he was not a party to the right of first refusal. Nixon also filed its motion to dismiss on January 22, 2018, claiming that specific performance was not feasible in this action because Dowe no longer

---

[1] Ansh filed a third-party complaint and Dowe filed a cross-claim against Steven and Nixon, asserting that Nixon, as closing attorney in the subject transaction, failed to notify the parties of the right-of-first-refusal's existence.

owned the property. Further, Nixon asserted that due to the improvements made on the property, the property described in the right of first refusal no longer existed.

¶7.     On February 6, 2018, after the recusal of all the Hinds County chancellors, the Mississippi Supreme Court appointed the Honorable James Walker as Special Chancery Judge. On October 5, 2018, Chancellor Walker held a hearing on both motions to dismiss. The chancellor relied on only the pleadings and arguments of counsel. On October 23, 2018, the chancellor entered his order dismissing Polk's original complaint requesting specific performance and ordered Polk to amend its complaint within fourteen days. In particular, the chancellor found that specific performance could not be ordered because the performance Polk requested was not the performance contemplated by the right of first refusal and, therefore, was impossible.

¶8.     On October 19, 2018, Polk filed its amended complaint asserting several claims against Dowe and Ansh. In particular, Polk brought a breach of contract and unjust enrichment claim against Dowe and an interference of contract and unjust enrichment claim against Ansh. The amended complaint also alleged that Ansh was bound by the right of first refusal and that Polk should be allowed to purchase the property. Further, Polk claimed that the warranty deed between Dowe and Ansh was void or voidable, that there was an encumbrance on the property due to the right of first refusal, and that the contract of sale was also void. Polk further requested that the chancellor award damages for Polk's loss of business opportunity and lost profits. In November 2018, Dowe and Ansh filed their answers

4

to Polk's amended complaint, and in February 2019, Steven and Nixon jointly filed a motion to dismiss Polk's amended complaint.

¶9. On October 1, 2019, the chancellor issued an agreed scheduling order and subsequently issued a corrected agreed scheduling order on October 31, 2019. Later, the discovery deadline was extended to November 11, 2019, to allow time to supplement discovery and re-open Polk's deposition. On November 11, 2019, at 4:17 p.m., Polk supplemented discovery and named Jimmy Odom and Michael Byrd as lay witnesses. Polk also supplemented discovery by providing documents to the Appellees after the discovery deadline.

¶10. Nixon filed a motion to exclude improperly designated experts, a motion for summary judgment, and a motion in limine. Polk filed its response to the motions on January 10, 2020. The matter was set for trial on January 13, 2020. On the morning of the trial, the chancellor heard Nixon's motions. Ultimately, the chancellor held the motion for summary judgment in abeyance until the conclusion of trial, denied the motion to exclude improperly designated experts, and declined to hear the motion in limine. As the trial commenced, the chancellor heard testimony from Dowe, Odom, Byrd, and Polk's owner (Buell).

¶11. After hearing all testimony and arguments of counsel, the chancellor gave his ruling from the bench but later memorialized his ruling on February 7, 2020, in his findings of fact and conclusions of law. The chancellor held that four of the seven claims brought by Polk were invalid causes of action because those counts were steps toward granting specific

performance.[2] The chancellor held that the other three counts were valid causes of action. The chancellor found that the right of first refusal was valid and binding, and because Dowe failed to uphold her end of the agreement, she breached the contract. The chancellor had already ruled on the remedy of specific performance and eliminated it, so the chancellor only considered damages. The chancellor held that Polk failed to present any credible evidence of his lost business opportunities, lost profits, or consequential or punitive damages.

¶12. Polk now appeals, arguing that the chancellor erred by not granting specific performance, by not accepting evidence of Polk's anticipated business profits, and by not enforcing the contract against a subsequent purchase pursuant to Mississippi Code Annotated section 89-5-7 (Rev. 2021).

## STANDARD OF REVIEW

¶13. An appellate court employs a "limited standard of review when reviewing the decisions of a chancellor." *Rush v. R&D Props. LLC*, 270 So. 3d 1098, 1103 (¶15) (Miss. Ct. App. 2018) (citing *Little v. Richey*, 230 So. 3d 336, 338 (¶9) (Miss. Ct. App. 2017)). "We will only reverse a chancellor's determinations if 'they were manifestly wrong, clearly

---

[2] The chancellor found that counts two (Ansh is bound by the terms of the right of first refusal), four (warranty deed is void or voidable against Dowe and Ansh), six (right of first refusal is an encumbrance against Dowe and Ansh), and seven (contract of sale is void against Dowe and Ansh) were invalid causes of action, as they were mere steps toward granting specific performance. However, the chancellor found that counts one (breach of contract against Dowe), three (interference of contract against Ansh), and five (unjust enrichment against Dowe and Ansh) were valid causes of action and addressed each in his February 2020 findings of fact and conclusions of law.

6

erroneous, or the chancellor applied an incorrect legal standard.'" *Id*. "The standard of review employed by this Court for review of a chancellor's decision is [an] abuse of discretion." *Alexis v. Black*, 283 So. 3d 1105, 1107 (¶10) (Miss. 2019) (internal quotation marks omitted) (quoting *McNeil v. Hester*, 753 So. 2d 1057, 1063 (¶21) (Miss. 2000)). Questions of law are reviewed de novo. *Biglane v. Under The Hill Corp.*, 949 So. 2d 9, 14 (¶17) (Miss. 2007).

## DISCUSSION

### I. Specific Performance

¶14. "A 'right of first refusal' is a conditional option empowering its holder with a preferential right to purchase property on the same terms offered by or to a bona fide purchaser." *Richmond v. EBI Inc.*, 53 So. 3d 859, 864 (¶17) (Miss. Ct. App. 2011). Polk's complaint alleged that Dowe had breached their right-of-first refusal agreement, and Polk claimed that specific performance was the most appropriate remedy due to the uniqueness of the real estate. Accordingly, Polk requested that the chancery court set aside the warranty deed, determine a fair and equitable price for the real property exclusive of any valuation for ongoing business located on the property, and grant Polk the right to purchase the property. Polk argues that it was entitled to specific performance due to its right of first refusal.

¶15. We have "considered specific performance as a particularly appropriate remedy in matters pertaining to a breach of a real estate contract, because of real estate's unique nature." *Houston v. Willis*, 24 So. 3d 412, 418 (¶19) (Miss. Ct. App. 2009) (internal quotation marks omitted) (citing *Van Etten v. Johnson (In re Est. of Pickett)*, 879 So. 2d 467, 471 (¶19)

7

(Miss. Ct. App. 2004)); *see also Derr Plantation Inc. v. Swarek*, 14 So. 3d 711, 720 (¶20) (Miss. 2009). This aptness is true especially if "one party is ready, willing, and able to perform his part of the contract." *Houston*, 24 So. 3d at 418 (¶19).

¶16. Traditionally, "specific performance has been regarded a remedy for breach of contract that is not a matter of right but of sound judicial discretion." *Frierson v. Delta Outdoor Inc.*, 794 So. 2d 220, 225 (¶13) (Miss. 2001) (citing *Osborne v. Bullins*, 549 So. 2d 1337, 1339 (Miss. 1989)). However, even with judicial discretion, "where a contracting party can feasibly be given what he bargained for, specific performance is the preferred remedy." *Id*. "In applying this discretion, courts will look at "the adequacy of damages to protect the expectation interest of the injured party" as well as the "level of transaction costs between the parties, and unless those costs are so high that no voluntary exchange can take place, the court should order specific performance." *Houston*, 24 So. 3d at 419 (¶19) (citing *Osborne*, 549 So. 2d at 1340)).

¶17. Nevertheless, "[b]efore a court can order specific performance, the court must be able to look at the instrument and determine what performance is required." *Duke v. Whatley*, 580 So. 2d 1267, 1274 (Miss. 1991) (citing *Crocker v. Farmers & Merchants Bank*, 293 So. 2d 438, 442 (Miss. 1974)). Here, the chancellor reasoned that the specific performance requested was impossible because it was not the performance of the right of first refusal. The chancellor found that specific performance of the right of first refusal would only consist of Dowe's delivery to Polk the offer that Ansh made on the property. The court also found that

the right-of-first refusal language did not support Polk's requested specific performance. The court explained that ordering specific performance would require the court to take secondary action against other parties and divest their interests in the land just to make performance even possible. Therefore, the court found specific performance impossible. We agree.

¶18.    As mentioned above, specific performance is an appropriate remedy if a party is ready, willing, and able to perform its part of the contract. *See Houston*, 24 So. 3d at 419 (¶19). Polk was not ready, willing, or able to pay the $400,000 Ansh offered Dowe for the property. In May 2017, Ansh informed Polk that Ansh was open to considering any offer Polk wanted to provide to purchase the property. Polk made no offer. In October 2017, Ansh filed its answer stating that it had purchased the property from Dowe for $400,000. Polk then filed its amended complaint asserting that Polk was willing and able to purchase the property for the sum of $400,000 per the terms of the right of first refusal. Despite the assertion, Polk did not tender the $400,000. In October 2019, during his deposition, Buell testified that he could not say if he would pay the $400,000 for the property and that he would not purchase the property at all without a survey. However, at the trial in January 2020, Buell was specifically asked:

> [Mr. Quinlivan]:    What changed between your deposition in October and today that made you decide that you wanted to pay $400,000 for this property?
>
> [Buell]:    I place a value of $400,000 on it.
>
> [Mr. Quinlivan]:    So there was nothing that changed between then and now?

[Buell]:               I am willing to pay $400,000 for the property today. I was not willing, when you did this before - - when we had the deposition, I was not willing. Today I am.

¶19.    The record shows that it was not until the trial in January 2020 that Buell stated he was willing to pay the $400,000 purchase price—well after the court's ruling on October 23, 2018. We have found specific performance to be "a 'particularly appropriate remedy' in matters pertaining to a breach of a real estate contract, because of real estate's unique nature." *Houston*, 24 So. 3d at 418 (¶19) (quoting *In re Est. of Pickett*, 879 So. 2d 467, 471 (¶12) (Miss. Ct. App. 2004)). However, the availability of this remedy depends on the party's readiness, willingness, and ability to perform. *Id*. "A party cannot obtain a decree for specific performance, without [showing] a compliance, or readiness to comply with his part of the contract." *Gunn v. Heggins*, 964 So. 2d 586, 590 (¶7) (Miss. Ct. App. 2007) (quoting *Tyler v. McCardle*, 17 Miss. (9 S. & M.) 230, 244 (1848)). When a party is not ready, willing, and able to tender performance, equity does not demand specific performance be ordered. *Id*. Polk's deposition and responses at trial shows that Polk was not ready or willing to pay the purchase price until January 2020. The chancellor properly exercised his discretion and did not err by refusing specific performance as a remedy. Also, specific performance would only be to require Dowe to deliver the information on the offer to Polk. Furthermore, at the time of the chancellor's ruling on specific performance, Polk did not follow through with the next steps required, i.e., an offer to purchase the property exactly as offered to Ansh for $400,000. The chancellor did not abuse his discretion in refusing to order specific performance.

## II. Damages

¶20.   "When reviewing the [chancery] court's decision to allow or disallow evidence, including expert testimony, we are bound by an abuse of discretion standard of review." *Webb v. Braswell*, 930 So. 2d 387, 396-97 (¶15) (Miss. 2006) (citing *Miss. Transp. Comm'n v. McLemore*, 863 So. 2d 31, 34 (¶4) (Miss. 2003)). Further, under Mississippi law, the burden is placed on the plaintiff to present sufficient evidence to prove their damages by a preponderance of the evidence. *Potts v. Miss. Dept. of Transp.*, 3 So. 3d 810, 813 (¶8) (Miss. Ct. App. 2009) (citing *TXG Intrastate Pipeline Co. v. Grossnickle*, 716 So. 2d 991, 1016 (¶84) (Miss. 1997)). "In any case a plaintiff is required to place into evidence such proof of damages as the nature of his case permits, with as much accuracy as . . . reasonably possible for him." *Soffra v. Shieldsboro Dev. Inc.*, 314 So. 3d 129, 143 (¶54) (Miss. Ct. App. 2020) (citing *Thomas v. Global Boat Builders & Repairmen Inc.*, 482 So. 2d 1112, 1116 (Miss. 1986)). Therefore, "[d]amages cannot be based on mere speculation but must be proved to a reasonable certainty." *Id*. (citing *Courtney v. Glenn*, 782 So. 2d 162, 166 (¶16) (Miss. Ct. App. 2000)); *see also Frierson*, 794 So. 2d at 225 (¶14).

¶21.   In this case, Polk asked the court to award him monetary damages for lost business opportunities, lost profits, consequential damages, and punitive damages. On appeal, Polk claims that the court erred by rejecting evidence of its anticipated business profits. However, applying the above standards, we agree with the chancellor that Polk failed to present any credible evidence of its lost business opportunities, lost profits, anticipated business profits,

11

and consequential or punitive damages. Buell testified that he personally valued the property at one million dollars and lost profits at $600,000. At trial, the chancellor explained that at that stage of proof presented he could not even venture an educated guess as to any damages that Polk would be entitled to, given the facts and circumstances. We agree. Polk's proof consisted only of Buell's oral statements. While his testimony is certainly relevant to his losses, his testimony by itself is simply too speculative to support an award of damages. Polk failed to produce any documentary evidence, receipts, or banking records in support of its claims.

¶22.    While the evidence presented at trial consisted primarily of Buell's testimony, Polk also called two witnesses: Jimmy Odom and Michael Byrd. Although the chancellor denied the witnesses the ability to testify as experts, the chancellor allowed Odom and Byrd to testify as lay witnesses. Buell maintained that Odom, as his accountant, possessed personal knowledge of Polk's damages. Odom testified that where Buell's businesses were concerned, he was familiar with their profits and losses. He explained that he handled the day-to-day transactions related to Buell's various businesses. Byrd, Polk's pharmacy manager, was responsible for Polk's pharmacy operations, and Polk claimed that Byrd could testify to the profitability of the pharmacy operations relating to its damages. However, because the chancellor limited Odom's and Byrd's testimony to personal and not specialized knowledge, neither Odom nor Byrd were able to testify about the profitability projection of the subject property.

12

¶23. While Polk claims that the chancellor erred by not receiving or considering evidence of anticipated profits, this simply is not true. "In Mississippi, a party may recover for loss of future profits in a breach of contract action so long as such profits are proved to a reasonable certainty and not based on mere speculation or conjecture." *Rolison v. Fryar*, 204 So. 3d 725, 741 (¶49) (Miss. 2016) (citing *Benchmark Health Care Ctr. Inc. v. Cain*, 912 So. 2d 175, 179 (¶8) (Miss. Ct. App. 2005)). Our supreme court held that "anticipated profits of an unestablished future business are generally too speculative for recovery, but where the business has been established, has made profits and there are definite, certain and reasonable data for their ascertainment, and such profits reasonably must have been in the contemplation of the parties at the time of the contract, they may be recovered at least for a limited reasonable future time, even though they cannot be computed with exact mathematical certainty." *Webb*, 930 So. 2d at 398 (¶18) (citing *Mizell v. Spires*, 246 S.E.2d 385, 387 (Ga. Ct. App. 1978)). As mentioned above, the chancellor allowed Polk ample opportunity to present evidence of its anticipated loss and profits. The chancellor heard testimony regarding Polk's ownership of adjoining properties and the goal of having ultimate control of the intersection located near the subject property. Buell provided testimony as to what he believed the property was worth, but he failed to present any credible evidence or documentation regarding Polk's losses or profits. The chancery court did not abuse its discretion by finding that Polk did not provide sufficient evidence to award damages.

¶24. Furthermore, Buell repeatedly stated that Polk was not suing the Appellees for

13

damages but only specific performance. During the trial, Buell was asked:

> [Mr. Rogers]: And you also said if you don't, if I understand correctly, if you don't get the Right of First Refusal, then you want your money damages, correct?
>
> [Buell]: No. I have said I wanted the first right of refusal. That is the first thing I want.
>
> [Mr. Rogers]: So why are you asking for money damages?
>
> [Buell]: I am not asking for money damages. I am asking for the First Right of Refusal.
>
> [Mr. Rogers]: Your Complaint, your Amended Complaint says you are asking for money damages. You are not asking for that?
>
> [Buell]: Not today.
>
> [Mr. Rogers]: So we can just take all of that out of your Complaint?
>
> [Buell]: I want the First Right of Refusal.

¶25. Although Dowe breached her contract to Polk by not providing it the right of first refusal, Polk did not present sufficient evidence to award damages. Thus, we find this claim to be without merit.

### III.    Mississippi Code Annotated Section 89-5-7

¶26. Polk argues that the chancellor erred by refusing to enforce Polk's right of first refusal against Ansh pursuant to Mississippi Code Annotated section 89-5-7. However, Polk did not raise this issue before the chancellor, and nowhere in the court's order was there any mention of a ruling on this argument. "Failure to raise an issue in a trial court causes operation of a procedural bar on appeal." *Birrages v. Ill. Cent. R.R. Co.*, 950 So. 2d 188, 194 (¶18) (Miss.

14

Ct. App. 2006). Since Polk did not bring this claim in the proceedings below, he is procedurally barred from doing so now.

## CONCLUSION

¶27. There being no reversible error, the judgment is **AFFIRMED**.

**BARNES, C.J., CARLTON, P.J., WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND SMITH, JJ., CONCUR. WILSON, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. EMFINGER, J., NOT PARTICIPATING.**